Electronically Filed
6/28/2022 2:45 PM
Fifth Judicial District, Blaine County
Stephen McDougall Graham, Clerk of the Court
By: Angie Ovard, Deputy Clerk

Edward A. Lawson, ISB No. 2440
Jared C. Kimball, ISB No. 5491
LAWSON LASKI CLARK, PLLC
675 Sun Valley Road, Suite A
Post Office Box 3310
Ketchum, Idaho 83340
Tel: (208) 725-0055
Fax: (208) 725-0076
eal@lawsonlaski.com
jck@lawsonlaski.com
efiling@lawsonlaski.com

Williamson, Ned C

Attorneys for Plaintiffs

## IN THE DISTRICT COURT OF THE FIFTH JUDICIAL DISTRICT

## OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF BLAINE

GERARD J. HART, solely in his capacity as
Trustee of the GERARD AND HEATHER
HART LIVING TRUST dated February 28,
2014, and HEATHER ANN HART, solely in
her capacity as Trustee of the GERARD AND
HEATHER HART LIVING TRUST dated
February 28, 2014,

           Plaintiffs,

v.

LEGENDS DEVELOPMENT COMPANY, a
Wyoming corporation; and GARY J.
ENGMAN, an individual,

           Defendants,

Case No. CV07-22-00320

### VERIFIED COMPLAINT FOR:

1. **BREACH OF CONTRACT**
2. **BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING**
3. **VIOLATION OF THE IDAHO PROPERTY CONDITION DISCLOSURE ACT § 55-2502, *et seq***
4. **VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT § 48-603(17)**
5. **FRAUD**
6. **RESCISSION**

*(and in the alternative (I.R.C.P. 8(d))*

7. **SPECIFIC PERFORMANCE**

**A DEMAND FOR
JURY TRIAL ON ALL COUNTS**

VERIFIED COMPLAINT- 1

COMES NOW, Gerard J. Hart, solely in his capacity as Trustee of the GERARD AND HEATHER HART LIVING TRUST dated February 28, 2014, and Heather Ann Hart, solely in her capacity as Trustee of the GERARD AND HEATHER HART LIVING TRUST dated February 28, 2014, ("Plaintiffs"), by and through their attorneys, Edward A. Lawson and Jared C. Kimball of the firm LAWSON LASKI CLARK, PLLC, and alleges for claims of relief against Defendants LEGENDS DEVELOPMENT COMPANY, a Wyoming corporation; and GARY J. ENGMAN, an individual, ("Engman") as follows:

## INTRODUCTION

(a).  This case is about promises made by Engman and promises then broken.  It is a case where Engman promised to repair specific and substantial defects in a property he sold to Plaintiffs, and where Engman also knew of, but hid and misrepresented other material defects in the property.  Plaintiffs' bargained for and demonstrated good faith was met instead by acute bad faith and by fraud in the inducement by Engman to lure Plaintiffs into a sales contract.

(b).  Instead of acting in good faith under the terms of the underlying contract and in honoring his clear written promises and other duties as a seller of real property, Engman failed to repair the identified defects at the property, and he also failed to make accurate and truthful property defect disclosures.  Engman left Plaintiffs with a materially defective home which will require substantial monies, time, and effort to remedy and repair.  Because of the conduct of Engman, described in detail below, Plaintiffs have gone from the excitement of buying a new home in Blaine County to facing a nightmare of defects and a long list of very costly and time consuming repairs. The underlying sales contract has been breached and its purpose wholly defeated by Engman.

VERIFIED COMPLAINT- 2

(c). Plaintiffs, therefore, must seek specific legal and equitable relief from this Court:

## I.    PARTIES

1.     Plaintiff Gerard J. Hart is a Trustee of the Gerard and Heather Hart Living Trust dated February 28, 2014, and a resident of Texas.

2.     Plaintiff Heather Ann Hart is a Trustee of the Gerard and Heather Hart Living Trust dated February 28, 2014, and a resident of Texas.

3.     Plaintiffs Gerard J. Hart and Heather Ann Hart, as Trustees (or their successors or assigns) of the Gerard and Heather Hart Living Trust dated February 28, 2014, own real property, which is the subject of this action, to-wit:  34 Cheval Circle, Bellevue, Idaho, 83313 (Blaine County Parcel No. RP003990000030).

4.     Legends Development Company is a Wyoming Profit Corporation (Domestic) with a principal place of business located at 970 W. Broadway, Suite E - #514, Jackson, Wyoming, 83301, and with a mailing address of P.O. Box 137 Bellevue, Idaho 83313.

5.     Legends Development Company lists its registered agent as Gary J. Engman, with an address at 970 W. Broadway, Suite E - #514, Jackson, Wyoming 83301.

6.     Gary J. Engman is an individual, upon information and belief, residing in Jackson, Wyoming, and/or in Ketchum, Idaho.

7.     On information and belief, Gary J. Engman is the President of Legends Development Company and he controls and dominates all of its business affairs. There existed a unity of interest in Legends Development Company and Gary J. Engman such that their individuality and separateness does not exist. Legends Development Company is a mere shell of an entity and the alter ego of Gary J. Engman, which Gary J. Engman has used as a conduit for his own personal and business affairs. Adhering to the fiction that Legends Development

Company has a separate and distinct existence apart from Gary J. Engman would perpetrate a fraud against Plaintiffs, promote injustice, yield an inequitable result, and constitute an abuse of corporate privilege.

8.    Plaintiffs are informed and believe, and thereon allege, that each of the Defendants sued herein was the agent, servant, employee, partner or joint venturer of each of the remaining Defendants, and was at all times, acting within the purpose and scope of such agency, service, employment, partnership or joint venture.  In making the misrepresentations, concealing the facts and performing or omitting to perform the acts set forth below, Gary J. Engman acted on his own behalf and on behalf of Legends Development Company.

## II.    JURISDICTION AND VENUE

9.    This Court has jurisdiction pursuant to Idaho Code § 5-514.  Venue lies in this District pursuant to Idaho Code §5-401, *et seq.* This action involves claims exceeding $10,000.00.

## III.    GENERAL ALLEGATIONS

### *(Applicable to All Claims for Relief)*

### *- Background -*

10.    In the spring of 2022, Plaintiffs searched for real property to purchase in Blaine County, Idaho.

11.    Their search finally led them to an architecturally unique residence located in Bellevue, Idaho in the "Bellevue triangle" and within the "Bellevue Farms" subdivision.

12.    The address of the real property identified by Plaintiffs for potential purchase is 30 Cheval Circle, Bellevue, Idaho, (the "Property"), also known locally as the "*Starship*" because of its unique modern design.  *See* **Exhibit # 1**.

13.     The seller of the Property as listed in public records (prior to purchase by Plaintiffs) is

Legends Development Company (Registered Agent, Gary J. Engman).

14.     Plaintiffs were attracted to the unique design and rural Bellevue Triangle setting of the

Property and elected to make an offer by submitting a Purchase and Sale Agreement dated February 10,

2022. *See* **Exhibit # 2.**

15.     That Purchase and Sale Agreement included a requirement for Seller to provide

disclosures mandated by the Idaho Property Condition Disclosure Act. *See id*. at p. 5.

16.     A counteroffer was proffered by Engman and executed by Buyer and Seller also

on February 10, 2022.  *See* **Exhibit # 3.**

17.     In plain recognition of the need to make substantial repairs to the Property, the

Counteroffer listed terms that amended the Purchase and Sale Agreement as follows:

> 5. Item # 16.  $250,000 of the Seller's proceeds to be held by Escrow
> post Closing until Seller can exhibit to Buyers Agent that all work orders
> on item # 16 have been completed. Seller shall have until June 1, 2022 to
> complete.  Upon acknowledgment that said repairs have been completed,
> money to be released immediately to Seller by Escrow.

*See id*.

18.     Item # 16 from the Purchase and Sale Agreement lists repairs that Seller is

required to perform:

> Seller agrees to complete work on the elevator.  Seller agrees to install a
> new pool liner and also repair the leaks in the ceiling below pool.  Seller
> to replace all damages windows. Seller to repair any doors that need repairing.

*See* **Exhibit # 2,** at p. 4.

19.     After entering the Agreement to purchase the Property, it soon became clear to

Plaintiffs that Engman was not progressing with his promised repairs.

20.     On March 25, 2022, Plaintiffs and Engman executed an Addendum which

provided for a "hold back" from Seller's sale proceeds of $250,000 – in the event that Engman

fails to "finish or repair any items that have not been completed." *See* **Exhibit # 4.**

21.     In the "Addendum" and at Engman's request, Plaintiffs also agreed to release

$100,000.00 in earnest money to Engman to help him facilitate and pay for repairs at the Project.

22.     As an incident of the marketing effort for the Property, Engman provided a RE-25

Seller's Property Disclosure Form ("Seller's Property Disclosure Form"), dated October 26,

2021, as mandated by the Idaho Property Condition Disclosure Act. *See* **Exhibit # 5.**

23.     On February 15, 2022, Engman prepared and provided Plaintiffs with a written

summary of Engman's promised repairs (with timelines) for defective windows, the elevator

defects, defective pool/water sealing, an "exactly" ordered pool liner, assurances for operability

of pool apparatus/items, and for full pool and full pool/4th floor ceiling waterproofing, which

later all proved to be incomplete, deeply flawed, and/or simply not performed. *See* **Exhibit # 6**.

24.     On March 22, 2022, Engman provided Plaintiffs with a schedule for "Starship

Projects Completions" – which included a line item listing of repairs that Engman agreed to

undertake and to perform prior to closing with a specific performance notation stating, "ALL

CONTRACT REPAIRS COMPLETE 4/29/22". *See* **Exhibit # 7.**

25.     Based on the written promises and personal assurances by Engman to make the

required repairs to the Property, Plaintiffs agreed to close on the Property on May 23, 2022.

26.     Following the May 23, 2022, closing, payment of the purchase price, and upon

taking possession of the Property, Plaintiffs identified that Engman had *not* performed the

promised repairs as agreed in writing in the Purchase and Sale Agreement (and in the

Addendum).

27.     On or about May 29, 2022, Plaintiffs also encountered a dizzying array of safety

and basic habitability issues left for them by Engman at the Property including a dangerous kitchen gas leak, no hot water, and exposed pipes spraying sewage/grey water into living spaces.

28.     On or about May 29, 2022, Plaintiffs had also began moving personal possessions into the Property, and when it later rained, Plaintiffs witnessed water pouring into the Property from the roof in various locations and running down over exposed electrical wiring in the elevator.

29.     Plaintiffs personal possessions, which had just been moved into the Property, then suffered water damage due to myriad leaks in the roof.

30.     Specifically, Plaintiffs identified the following as incomplete, or never initiated repairs which Engman failed to perform and which were promised by Engman as a condition of closing:

    (a)    Promise for roof top pool to be professionally repaired and sealed:

        (1).    Not repaired (Engman installed a faulty or used/repurposed pool liner).

        (2).    Pool equipment not functioning/outlets obstructed by faulty pool liner installation/liner not fitted for pool.

        (3).    No safety rail installed around pool as promised.

        (4).    Engman promised a "20-year" professional guarantee on pool repairs and instead attempted repairs on his own or with his handyman with no available factory/professional warranty.

        (5).    Pool/roof of 4th floor not waterproofed; allows substantial water to penetrate interior living spaces below; exacerbated by rain.

    (b)    Promise to replace "fogged" and broken/cracked windows prior to closing:

        (1).    Windows not replaced leaving several dozen broken/fogged/cracked windows which still require replacement.

    (c)    Promise for elevator to be professionally replaced by early April 2022:

        (1).    Not repaired, found to be inoperable, exposed wiring

        (2).    Engman engaged an elevator company but withheld from Plaintiffs that he also intended to perform partial work/repairs himself or through his handyman.

   (d)    Promise to repair and seal doors:

        (1).    Doors fail to seal and lack weather stripping throughout the Property allowing water to penetrate the house.

31.    Engman also concealed and suppressed from the Plaintiffs the following material defects within the Property which were not disclosed by Engman as required by Idaho law on the "Seller's Disclosures" provided to Plaintiffs:

   (a)    Dishwasher marked as "working" but found to be inoperable.

   (b)    (Sink Garbage) Disposal marked as "working" but no such disposal exists.

   (c)    Oven Cooktop Range marked as "working" but contains a number of serious gas leaks requiring full removal and replacement by Plaintiffs.

   (d)    Security System marked as "working" but instead inoperable and had been disconnected – and flowmeter on the fire alarm/sprinkler system had been disconnected/disabled rendering it inoperable.

   (e)    Light Fixtures marked as "working" but include bare/stripped wiring simply inserted into outlets.

   (f)    Smoke Detectors and Carbon Monoxide Detectors marked as "working" but neither were found present anywhere in the property.

   (g)    Prior Water Intrusion was marked as "No" whereas roof leaks constantly and upon encountering rain, the house was inundated with water intrusion through the roof, doors, and windows; Property reveals signs of prior water intrusion throughout.

   (h)    Hot Tub/Jacuzzi marked as "working" but Engman simply removed it from the Property and left exposed wiring to the elements.

   (i)    Pool marked as "working" but pool does not work even after Engman's attempted repairs; Engman installed an ill-fitting repurposed/used pool liner that leaks and which covers outlets leaving pool and pool implements

VERIFIED COMPLAINT- 8

wholly inoperable.

(j)    Water Heater marked as "working" but there is no hot water available in the master bedroom or throughout most of the house.

(k)    Septic System marked as "working" but septic found instead to be full, seeping sewage/odor.

(l)    Sump Pump/Lift Pump marked "working" but instead found to be damaged/inoperable and causing grey water/sewage to spray into the interior of the house.

(m)    Roof marked as "No" for leaks, but myriad roof leaks are present and are exacerbated following any normal rain event; to-wit;

    (1).    <u>Main Floor and Garages</u>:  Water leaking through main floor, garages, and water streaming into elevator shaft through electrical wiring; water leaking into guest bedroom.

    (2).    <u>Second Floor</u>:  Water leaks at top of staircase; leaks in laundry room; substantial water leaking into loft bedroom.

    (3).    <u>Third Floor</u>: Substantial water leaking at top of staircase; water entering office area, water leaking/running down interior walls of office and across wiring.

    (4).    <u>Fourth Floor</u>:  Substantial water leaking from the roof/pool area with multiple locations where water is coming into the interior living spaces through the roof.

(n)    House is infested with rodents and birds living inside but marked as "No" regarding rodent infestation.

32.    Because of Engman's failed promises and other concealments, Plaintiffs have been required to expend substantial monies to make the Property safe, habitable, and to otherwise complete specific repairs left unfinished by Engman, and to make myriad repairs to remedy the undisclosed defects in the Property.

## COUNT I

### *- Breach of Contract -*

33.    Plaintiffs incorporate by reference all prior allegations of this Verified Complaint

VERIFIED COMPLAINT- 9

and Demand for Jury Trial in full here and applicable to all counts below.

34.    The Agreement between Engman and Plaintiffs constitutes a valid and binding Contract whereby Engman agreed to make specific and timely repairs to the Property and to disclose any defects at the Property in accordance with Idaho law.

35.    Plaintiffs have fully and timely performed all of their obligations under the Agreement except where those obligations were waived or excused.

36.    Engman has breached his Agreement by failing to perform promised repairs, by failing to correct defects, and by also concealing and withholding information regarding other material defects in the Property.

37.    As a direct result of Engman's breach, Plaintiffs have been damaged and will continue to be damaged in an amount to be proven at trial, but in no event less than $1,000,000.000.

## COUNT II

### - Breach of Implied Duty of Good Faith and Fair Dealing -

38.    Plaintiffs incorporate by reference all prior allegations of this Verified Complaint and Demand for Jury Trial in full here and applicable to all counts below.

39.    In the Agreement there is an implied covenant of good faith and fair dealing that obligated both parties to act in good faith with each other to prevent the other's expectations under the contract from being frustrated.

40.    Engman breached the covenant of good faith and fair dealing by failing to repair agreed upon defects in the Property as promised and as set forth in ¶ 30 (a-d) and by concealing other material defects in the Property as set forth in ¶ 31 (a-n).

41.     As a result of the breach, Plaintiffs have been damaged in an amount to be proven at trial which exceeds $1,000,000.00.

## COUNT III

### *- Violation of the Idaho Property Condition Disclosure Act -*
### *(I.C. § 55-2502, et seq)*

42.     Plaintiffs incorporate by reference all prior allegations of this Verified Complaint and Demand for Jury Trial in full here and applicable to all counts below.

43.     Unless exempt, the seller of residential real property is required by Chapter 25 of Title 55 of the Idaho Code known as the Idaho Property Condition Disclosure Act ("Act") to disclose certain defects in the property to a prospective buyer.

44.     Engman, as Seller of the Property, had the duty to comply with the Act and provide the required disclosures and to act honestly and in good faith, in the conduct of the purchase and sale transaction.

45.     Engman through his agent, provided Plaintiffs with a Sellers Property Condition Disclosure Form, and, as alleged above, Engman failed to disclose material information about the myriad defects in the Property in violation of the Act.

46.     If Engman had fulfilled its obligations under the Act and had truthfully disclosed the full scope and nature of defects, Plaintiffs would not have purchased the Property at the agreed upon price or would have then exercised a right of rescission.

47.     Pursuant to Idaho Code § 55-2517, by willfully or negligently violating or failing to perform the duties prescribed by the Act, Engman is liable to Plaintiffs in the amount of the actual damages they have suffered.

48.     In doing the things complained of, Engman willfully and negligently violated and failed to comply with the requirements of Idaho Property Condition Disclosure Act.

49.     As a direct result of the violation and failure to comply with the duties prescribed by the Idaho Property Condition Disclosure Act, Plaintiffs suffered damages in an amount in excess of $1,000,000 to be determined at trial.

## COUNT IV

### *- Idaho Consumer Protection Act -*
### *(I.C. § 48-603, et seq)*

50.     Plaintiffs incorporate by reference all prior allegations of this Verified Complaint and Demand for Jury Trial in full here and applicable to all counts below.

51.     Idaho Code § 48-603(17) declares that it is unlawful to engage "in any act or practice which is misleading, false, or deceptive to the consumer."

52.     Engman made repeated assurances and promises regarding repairs to the Property which proved to be misleading, false and deceptive to Plaintiffs (the consumer).

53.     Engman promised, through his endorsement of the Idaho Property Condition Disclosure Act "Seller's Disclosures" form to provide true and correct information, but instead concealed and misrepresented the actual and current condition of the Property.

54.     Plaintiffs, therefore, in good faith, relied on multiple representations made by Engman which proved to be misleading, false, deceptive and highly detrimental to Plaintiffs as the consumer.

## COUNT V

### *- Fraud -*

55.     Plaintiffs incorporate by reference all prior allegations of this Verified Complaint and Demand for Jury Trial in full here and applicable to all counts below.

56.     From on or about February 2022 through on or about June 2022 and thereafter, Legends Development Company and Gary J. Engman, who are inseparable as defined in

paragraphs above, made the certain representations to Plaintiffs and also concealed certain defects in the Property from Plaintiffs.

57.     Each of the representations and each of the concealments noted above in ¶ 30 (a-d) and ¶ 33 (a-n), promised or concealed, respectively, by the Engman were false, misleading, grossly inaccurate and/or fraudulent, and Engman knew those representations and concealed facts were false, misleading, grossly inaccurate and/or fraudulent at the time that they were made or concealed.

58.     In making the representations and in concealing the material facts noted above in ¶ 30 (a-d ) and ¶ 31 (a-n), Engman intended to induce the Plaintiffs, and did induce the Plaintiffs, to enter into and to not rescind the Purchase and Sale Agreement.

59.     Plaintiffs were ignorant of the falsity of the representations and of the concealed facts/defects noted above in ¶ 30 (a-d ) and ¶ 31 (a-n), and Plaintiffs were ignorant of Engman's real intention not to perform his promises to repair and his intention not to honor other statutory obligations to disclose defects within the Property.

60.     Plaintiffs acted in reasonable reliance on the repair promises noted above at paragraph ¶ 30 (a-d), and in reliance on Engman's (Seller's) disclosures noted above at ¶ 31 (a-n), where Engman specifically intended for Plaintiffs to so rely, and Plaintiffs were thereby induced to enter into an Agreement with Engman, foregoing an opportunity to rescind the Agreement.

61.     Had Plaintiffs known of the actual intentions and concealments by Engman, Plaintiffs would have not purchased the Property at the agreed upon price or would have exercised the right of rescission.

62.     Plaintiffs' reliance on the promises and disclosures described above and made by

Engman, were justified, especially given the personal touch(es) and personal promises applied by Engman in the inducement.

63.     As a direct and proximate result of the intentional misrepresentations and concealments described above, Plaintiffs in good faith consummated the purchase of the Property on May 23, 2022, and paid the Engman therefore the sum of $5,750,00.00.

64.     Plaintiffs estimate the cost to make the Property habitable and to effect required and outstanding repairs exceeds one million dollars ($1,000,000.00) and will greatly exceed the $250,000.00 "hold-back" from the proceeds of the sale.

65.     As a proximate result of the promises and misrepresentations, and also as a proximate result of the concealments in the seller's disclosures by Engman described above in ¶ 30 (a-d) and ¶ 31 (a-n), Plaintiffs have suffered damages in an amount to be determined at trial, but not less than the jurisdictional limit of this Court.

## COUNT VI

### *- Rescission -*

66.     Plaintiffs incorporate by reference all prior allegations of this Verified Complaint and Demand for Jury Trial in full here and applicable to all counts below.

67.     In doing the things complained of Engman acted fraudulently or on the basis of a mutual mistake.

68.     Plaintiffs became aware of the existence of the grounds for rescission on or about the May 23, 2022, closing on the Property, but did not immediately rescind because of Engman's continuous representations that repairs had been made as promised, and based on Engman's assurances that any remaining or incomplete repairs would not exceed the $250,000.00 "hold-back" against Engman's proceeds from the sale of the Property.

69.     Upon taking possession of the Property it became clear that Engman was not able or willing to effect the promised repairs, and further that Engman had previously concealed material, safety, and habitability defects in the Property.

70.     Engman, through his actions, has breached the underlying contract materially which had destroyed the entire purpose of the contract.

71.     Plaintiffs therefore seek equitable relief in the form of rescission to restore the parties to their pre-contract position.

## COUNT VII

### *- Specific Performance -*

### *(Pleaded in the alternative (I.R.C.P. 8(d))*

72.     Plaintiffs incorporate by reference all prior allegations of this Verified Complaint and Demand for Jury Trial in full here and applicable to all counts below.

73.     Engman has breached the Agreement with Plaintiffs by failing to perform promised repairs and by failing to disclose defects contained within the Property as required by Idaho law.

74.     Plaintiffs have fully and timely performed the provisions of the Agreement to be performed by them.

75.     Plaintiffs are and at all times relevant have been ready, willing and able to perform those provisions of the Agreement on its part to be performed.

76.     Engman's refusal to perform his obligations under the terms of the Agreement has deprived Plaintiffs of the benefits of Engman's written and contractual bargain.

77.     Plaintiffs have no adequate remedy at law in that the Property is unique and special and Plaintiffs cannot be fully, fairly or adequately compensated by money damages. Plaintiffs are entitled to specific performance of the Agreement under the express provision of Paragraph 22(12) of the Purchase and Sale Agreement (a contract) and at common law.

78.     As a direct and proximate result of Engman's breach of the Contract, Plaintiffs have been damaged in an amount to be proven at trial, but in no event less than $1,000,000.00.

### ATTORNEYS' FEES AND COSTS

Plaintiffs have been forced to incur attorneys' fees and costs in connection with this matter and are entitled to recover from the Engman their reasonable attorneys' fees and costs pursuant to Idaho Code §§ 12-120, 12-121 and I.R.C.P. Rule 54.

### PRAYER

WHEREFORE, Plaintiffs pray for judgment against the Engman, as follows:

1.     On Count I, for all damages proximately caused by Engman's breach of contract;

2.     On Count II, for all damages proximately caused by Engman's breach of implied duties of good faith and fair dealing;

3.     On Count III, for all damages suffered as a result of Engman's failure to perform duties prescribed by the Idaho Property Condition Disclosure Act;

4.     On Count IV, for all damages suffered as a result of Engman's failure to perform duties prescribed by the Idaho Consumer Protection Act;

5.     On Count V, for all damages suffered by Engman's acts of fraud;

6.     On Count VI, for relief through rescission of the Agreement between the parties; and, as pleaded in the alternative;

7.      On Count VII, for specific performance of the Agreement, and for all damages proximately caused by Engman's failure(s) in performing the Agreement between the parties;

8.      On all Counts, for interest, attorneys' fees and costs pursuant to Idaho Code § 12-120 and § 12-121, 45-501 *et seq*, Idaho Rule of Civil Procedure 54, and other applicable rules, and for such other and further relief as the Court deems just and proper in both law and equity.

**DEMAND FOR TRIAL BY JURY**

The Plaintiffs hereby demand trial by jury pursuant to I.R.C.P. 38(b).

Dated this 28th day of June 2022

LAWSON LASKI CLARK, PLLC


By: /s/ *Jared C. Kimball*
Edward A. Lawson
Jared C. Kimball
Attorneys for Plaintiffs

## VERIFICATIONS

I, GERARD J. HART, (in his capacity as the Trustee of the Gerard and Heather Living Trust dated February 28, 2014), being duly sworn, declare and affirm pursuant to Idaho Code § 9-1406 as follows:  That is GERARD J. HART Trustee for Plaintiff in the above-entitled action; that GERARD J. HART has read the within and foregoing Verified Complaint.

I, GERARD J. HART certify (or declare) under penalty of perjury pursuant to the law of the State of Idaho that the foregoing is true and correct.

DATED this 28ᵀᴴ day of June 2022, at Bellevue, Idaho.

/s/ *Gerard J. Hart*
GERARD J. HART

I, HEATHER A. HART, (in her capacity as the Trustee of the Gerard and Heather Living Trust dated February 28, 2014), being duly sworn, declare and affirm pursuant to Idaho Code § 9-1406 as follows:  That is HEATHER A. HART Trustee for Plaintiff in the above-entitled action; that HEATHER A. HART has read the within and foregoing Verified Complaint.

I, HEATHER A. HART certify (or declare) under penalty of perjury pursuant to the law of the State of Idaho that the foregoing is true and correct.

DATED this 28ᵀᴴ day of June 2022, at Bellevue, Idaho.

/s/ *Heather A. Hart*
HEATHER A. HART



EXHIBIT 1





EXHIBIT 2

# Real Estate Purchase And Sale Agreement

**1. Purchase Price** $5,500,000.00 | Five Million Five Hundred Thousand Dollars And Zero Cents

**2. Buyer:** Gerard Hart and Heather Hart and/or assigns  (Husband and Wife)

Seller: Legacy Development Company

Property Address: 30 Cheval Circle

Legal Description: Lookout Circle Sub Lot #3  Bellevue Farms

City: _____ County: Blaine State: Idaho

**3.** Buyer hereby offers to purchase the above described Property on the following terms and conditions:

Terms The Purchase Price is payable as follows:

$ 5,500,000.00  Cash, cashier's check, loan proceeds, or certified funds at Closing, including Earnest Money
$ _____  Seller Financing – See Financing Contingency "Other Financing Terms"
$ 0.00  Other – See Financing Contingency "Other Financing Terms"

$ 5,500,000.00  Total Purchase Price – Not including Closing costs

**4. Earnest Money** $100,000.00 | One Hundred Thousand Dollars And Zero Cents

Form: | To be Held By: | Other Remarks: _____
[x] Personal Check | [ ] Listing Broker |
[ ] Cashier's Check | [ ] Selling Broker |
[ ] Wire Transfer | [x] Title Company |

Earnest Money to be delivered within three (3) business days, unless otherwise stated, after acceptance of this Agreement and deposited into a trust account upon receipt.

**5. Offer Expires On:** Date: February 11, 2022   Time: 12:00 PM

**6. Closing Date:** No longer than 90 days from mutual acceptance  In the event the specified Closing Date is not a Business Day, the Closing shall occur on the next Business Day following the specified Closing Date.
Possession Date: [x] On Closing date OR [ ] Other: _____

**7. Responsible Closing Broker:** Mark C Brown / Office: Pioneer Associates R.E. Brokers
Responsible Closing Agency: Paige McAllister / Title Co: Pioneer Title Inc

**8. New Construction or Recent Improvements:** [x] Yes [ ] No
If "YES", see Standard Terms, paragraph 6, of this Agreement.

**9. Inspection Contingency** [x] Yes [ ] No

1) This offer is contingent upon Buyer's acceptance of the condition of the Property, subject to paragraph 7, below, in writing on or before 30 days from mutual written acceptance This Inspection Contingency is intended to provide the Buyer a reasonable opportunity to investigate all material conditions affecting the Property with the expectation that the Buyer will, in good faith, make reasonable inquiry and not rely on the Inspection Contingency to object to conditions that are not material or that relate to Buyer's personal preferences or taste. If Buyer does not provide notice pursuant to paragraph 7, below, on or before the date set forth above, Buyer shall be deemed to have accepted the condition of the Property.

2) Buyer shall have the right to, and is strongly advised to, conduct inspections, tests, surveys and other studies ("inspections") at Buyer's sole cost to confirm all information provided to Buyer, and to thoroughly inspect the Property.

3) Square footage verification: Buyer is aware that any reference to the square footage of the Property or its improvements has not been verified. Alternative methods of measurement and calculation may vary significantly. If square footage is material to the Buyer, Buyer must verify same during the inspection period.

4) Water Rights verification: It is strongly advised that the Buyer contact a knowledgeable attorney of the Buyer's choice, experienced in water law, to advise the Buyer of the validity, quality, and quantity of any water right acquired with real estate described in this Agreement. Buyer must verify same during the inspection period.

5) Buyer to select own professionals with appropriate qualifications to conduct all inspections and verifications.

6) Seller shall provide reasonable access for such inspections; Buyer shall indemnify Seller and hold Seller harmless from all injury, loss or liability arising from such inspections.

Inspection Contingency – Continued

Document # MB-102-2022  Buyer's Initials _____ Date 2-10-22  Seller's Initials _____ Date 2-10-22
Date of Document: Feb 10, 2022  Buyer's Initials _____ Date 2-10-22  Seller's Initials _____ Date 2-10-22

1 of 9  This Real Estate Purchase and Sale Agreement is for the sole use of the members of the Sun Valley Board of REALTORS and is copyrighted as such.
Serial# 009473-000104-4028085
Prepared by Mark Brown | Pioneer Associates | mark@markbrown.net | 2087254005

EXHIBIT
2

contingency period, give or if the following written notices to Seller:

A. Notice of the condition(s) and/or defect(s) to which Buyer objects and declaring this Agreement null and void, in which case the Earnest Money shall be refunded to Buyer (less any unpaid expenses incurred on behalf of Buyer pursuant to the "Costs To Be Paid By" section); or

B. Notice of the condition(s) and/or defect(s) to which Buyer objects and Buyer's desired remedy shall be set forth in writing, in which case this Agreement shall remain in effect, subject to sub-paragraph C, below

C. Upon receipt of notice under paragraph B, above, Seller shall have ____ business days (3 if blank) to give Buyer written notice (by signing the Buyer's Contingency Release form) that Seller will correct all such condition(s) and/or defect(s), or identify such condition(s) and/or defect(s) that will or will not be corrected. If Seller does not sign the Buyer's Contingency Release form, or modifies the corrections requested by Buyer, Buyer may, within ____ business days (3 if blank) following Seller's notice period, above, release the contingency in writing in its entirety or as modified by Seller, or this Agreement shall be null and void, in which case the Earnest Money shall be refunded to Buyer (less any unpaid expenses incurred on behalf of Buyer pursuant to the "Costs To Be Paid By" section). In the event the Contingency Release is subject to corrections to be performed by Seller, Buyer shall be entitled to conduct a walkthrough prior to Closing to confirm completion of the agreed upon corrections. Buyer's closing of the transaction shall constitute acceptance of the condition of the Property, unless otherwise stated in writing signed by both parties.

8) **FHA INSPECTION REQUIREMENT,** If applicable: "For Your Protection: Get a Home Inspection", HUD 92564-CN must be signed on or before execution of this agreement.

---

**10. CC&R/Association Documents Contingency**                    Yes ☐ No ☒

Buyer shall have the right to review any Declarations, CC&Rs, Plats and/or Owner Association documents impacting the Property.

If Buyer has not released this contingency in writing on or before ____ 30 days from mutual written acceptance this Agreement shall terminate and the Earnest Money shall be refunded to Buyer (less any unpaid expenses incurred on behalf of Buyer pursuant to the "Costs To Be Paid By" section).

---

**11. Lead-Based Paint Disclosure / Contingency**  The Subject Property is "Target Housing" (built prior to 1978)

regarding lead-based paint and/or lead-based hazards, regardless of the source of the lead: Yes ☐ No ☒

If "YES", Buyer has been provided with Seller's completed and signed "Disclosure of Information and Acknowledgement: Lead-Based Paint and / or Lead-Based Paint Hazards" ("Disclosure") and a copy of the pamphlet "Protect Your Family From Lead in Your Home" ("Pamphlet"), and one of the following boxes must be checked:

☐ Buyer shall have the unconditional right to cancel this Agreement and shall be allowed ten (10) days to conduct an inspection for lead-based paint hazards. Should Buyer elect to conduct a lead-based paint inspection, a "Lead-Based Paint Inspection Contingency Addendum" shall be attached hereto; OR

☐ Buyer hereby acknowledges receipt of the Disclosure and Pamphlet and hereby waives the right to conduct a lead-based paint inspection.

---

**12. Financing Contingency**                    Yes ☐ No ☒

This offer is contingent upon the Property appraising at no less than the Purchase Price.

This offer is contingent upon Buyer securing the following financing:

Assume Existing Loan: ☐

New Loan: ☐          Type of Loan: Conv. ☐, FHA ☐, VA ☐, Other ☐

Amount $/Percent %_____   Maximum % Rate: _____   Fixed Rate ☐      Adj. Rate ☐

Years: _____   Maximum Points: _____   Institutional Lender ☐   Private Lender ☐

If FHA or VA, it is expressly agreed that notwithstanding any other provisions of this contract, the Buyer shall not be obligated to complete the purchase of the Property, or to incur any penalty by forfeiture of earnest money deposits, or otherwise, unless the Buyer has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement lender setting forth the appraised value of the Property of not less than $_____. The Buyer shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. The Buyer should satisfy himself/herself that the price and condition of the Property are acceptable.

Financing Contingency – Continued

---

Document #   MB-102-2022     Buyer's Initials _____ Date _2-10-22_   Seller's Initials _____ Date _2-10-22_

Date of Document   Feb 10. 2022    Buyer's Initials _____ Date _2-15-22_   Seller's Initials _____ Date _2-10-22_

This Real Estate Purchase and Sale Agreement is for the sole use of the members of the Sun Valley Board of REALTORS and is copyrighted as such. Version 6.2 * 11/2021

Serial: 009473-800184-4508885

Prepared by: Mark Brown | Pioneer Associates | mark@markbrown.net | 2087264005

zForm

Financing Contingency - Continued

Other Financing Terms: _____

Buyer agrees to make a best effort to obtain such financing and to make written application to the lender within _____ business days after acceptance of this Agreement by both parties. **(5 business days if not specified)**

☐ Preliminary Approval: Buyer shall, on or before _____
provide Seller with a letter from Buyer's lender evidencing preliminary approval of Buyer's ability to qualify for the loan amount and terms set forth above, subject only to such reasonable and customary conditions as the lender typically imposes on such preliminary approval letters.

If Buyer has not released this contingency in writing on or before _____
this Agreement shall terminate. In such case, upon delivery to Seller of written confirmation from the lender or lending institution that a loan is not approved for Buyer at the terms set forth above, the Earnest Money shall be refunded to Buyer (less any unpaid expenses incurred on behalf of Buyer pursuant to the "Costs To Be Paid By" section of this Agreement). In the event no such written confirmation is delivered to Seller within _____ days of the termination under this paragraph, the Earnest Money shall be paid to the Seller (less any unpaid expenses incurred on behalf of Buyer pursuant to the "Costs To Be Paid By" section of this Agreement.

**13. Sale of Buyer's Property Contingency**                     Yes ☐     No ☒

This offer is contingent on the closing of a sale of Buyer's property located at: _____

Listed with: _____     Listing Agent: _____     Phone _____
If Buyer has not released this contingency in writing on or before _____

this Agreement shall terminate and the Earnest Money shall be refunded to Buyer (less any unpaid expenses incurred on behalf of Buyer pursuant to the "Costs To Be Paid By" section of this Agreement).

**14. Seller's Right to Accelerate Buyer's Contingency Releases**     Yes ☐     No ☒

Should Seller receive another acceptable offer to purchase, prior to the release of ☐ all contingencies,
or ☐ the Sale of Buyer's Property Contingency only, Seller shall give Buyer written notice of such new offer.
In the event the Buyer does not release the required contingencies in writing within _____ business days after the receipt of such notice then this Agreement shall terminate and the Earnest Money shall be returned to Buyer (less any unpaid expenses incurred on behalf of Buyer pursuant to the "Costs To Be Paid By" section of this Agreement). In the event the Buyer does release the contingencies, the Buyer shall proceed to purchase the Property under the remaining terms and conditions of this Agreement, notwithstanding that the terms of the new offer may be more or less favorable.

**15. Other Contingencies**     Yes ☐     No ☒     See Addendum(s) ☐

If Buyer has not released this / these contingency(ies) in writing on or before _____
this Agreement shall terminate and the Earnest Money shall be refunded to Buyer (less any unpaid expenses incurred on behalf of Buyer pursuant to the "Costs To Be Paid By" section of this Agreement).

Document # ____ MB-102-2022 ____   Buyer's Initials _____   Date 2-10-22   Seller's Initials _____   Date 2-10-22
Date of Document: ____ Feb 10, 2022 ____   Buyer's Initials _____   Date 2-10-22   Seller's Initials _____   Date 2-10-22

3 of 8     This Real Estate Purchase and Sale Agreement is for the sole use of the members of the Sun Valley Board of REALTORS and is copyrighted as such. Version 8.2 * 11/2021
Serial#: 038473-800164-4528985
Prepared by: Mark Brown | Pioneer Associates | mark@markzbrown.net | 2087264005

**16. Additional Terms**                                    Yes [X] NO [ ]   See Addendum(s) [ ]

> 1) Buyers to deposit an additional $150,000.00 upon removal of all contingencies. At that time all earnest monies become nonrefundable.
> 2) Seller agrees to complete the work on the elevator. Seller agrees to install a new pool liner and also repair the leaks in the ceiling below the pool. Seller to replace all damaged windows. Seller to repair any doors that need repairing.

**17. Included Items (In addition to Standard Terms, paragraph 4)   Excluded Items**

| | |
|---|---|
| All water rights.<br>Cook top; dishwasher: Freezer; Oven-gas; Range - gas; Refrigerator, W/D Hookups; Washer<br>Polaris side by side. | Buyers and Seller agree to establish an inventory list of any personal items that are included in the sale any items that the Buyers may purchase. |

**18. Title Insurance**

Standard Title Insurance - Seller shall make a reasonable effort to furnish to the Buyer a preliminary commitment for title insurance within five (5) business days after acceptance of the Agreement showing the condition of the title to the Property. Buyer shall have five (5) business days from the receipt of the commitment within which to object to the condition of the title as set forth in the commitment. If the Buyer does not object, the Buyer shall be deemed to have accepted the conditions of the title. In the event Buyer objects, Seller shall have five (5) business days, or until twenty-four (24) hours prior to the Closing, whichever first occurs, to make title marketable or this Agreement shall terminate and the Earnest Money shall be refunded to Buyer (less any unpaid expenses incurred on behalf of Buyer pursuant to the "Costs To Be Paid By" section of this Agreement). The Seller shall, within a reasonable time after Closing, furnish to the Buyer a title insurance policy in the amount of the Purchase Price of the Property showing marketable and insurable title subject to the liens, encumbrances and defects elsewhere set out in this Agreement to be discharged or assumed by the Buyer.

Extended and Other Coverage Title Policies – A standard policy of title insurance does not cover certain potential problems or risks such as liens (i.e., a legal claim against property for payment of some debt or obligation), boundary disputes, claims of easement, and other matters or claims if they are not of public record at the time of Closing. However, under Idaho law such potential claims against the property may have become a legal obligation before the purchase of the home and may not yet be of public record until after the purchase. Title Insurance companies may be able to issue an "extended coverage" policy for an additional premium. In addition to the premium for an extended coverage title policy, there may be other costs involved, i.e., survey or additional Closing fees. Such a policy may protect the Buyer against such problems. It is recommended that the Buyer talk to a title insurance company about what it offers in the way of extended coverage and other coverages that may be appropriate. Only the policy itself shows exactly what type of coverage is offered, so contact a title company for particulars.

| **19. Costs To Be Paid By** | Appraisal | Standard Title Ins. | Closing Escrow Fee | Assessments | Well Insp. | Septic Insp. | Septic Pumping | Other: |
|---|---|---|---|---|---|---|---|---|
| Buyers | [X] | [ ] | [ ] | [ ] | [X] | [X] | [X] | [ ] |
| Sellers | [ ] | [X] | [ ] | [X] | [ ] | [ ] | [ ] | [ ] |
| Share Equally | [ ] | [ ] | [X] | [ ] | [ ] | [ ] | [ ] | [ ] |
| N/A | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |
| See Addl. Terms | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |

**20. Broker working with Seller**                          **Broker working with Buyer**

| | | |
|---|---|---|
| Broker's Name: | Christina Nelson | Broker's Name: | Mark C Brown |
| Listing Agent: | Blake C Nelson/ Melisa Tindall | Selling Agent: | Mark C Brown |
| Brokerage: | Compass Mountain West LLC | Brokerage: | Pioneer Associates R.E. Brokers |
| Mailing Address: | 360 East Ave N. Unit 2&3 | Mailing Address: | P.O. Box 5618 |
| City, State, Zip: | Ketchum, Idaho 83340 | City, State, Zip: | Ketchum, Idaho 83340 |
| Office Phone: | | Office Phone: | 208 481 1519 |
| Fax: | | Fax: | |
| E-Mail: | blake.nelson@compass.com | E-Mail: | mark@markcbrown.net |

Document #  MB-102-2022   Buyer's Initials _____ Date 2.10.22   Seller's Initials _____ Date 2-20-22
Date of Document:  Feb 10, 2022   Buyer's Initials _____ Date 2.10.22   Seller's Initials _____ Date 2-10-22

4 of 8   This Real Estate Purchase and Sale Agreement is for the sole use of the members of the Sun Valley Board of REALTORS and is copyrighted as such. Version 8.2 ~ 11/2021
Serial#: 068251-600164-4520893
Prepared by Mark Brown | Pioneer Associates | mark@markcbrown.net | 2087264005                Form

Check one (1) box in Section 1 below and one (1) box in Section 2 below to confirm that in this transaction, the brokerage(s) involved had the following relationship(s) with the BUYER(S) and SELLER(S).

**Section 1:**
- [x] The brokerage working with the BUYER(S) is acting as an AGENT for the BUYER(S).
- [ ] The brokerage working with the BUYER(S) is acting as a LIMITED DUAL AGENT for the BUYER(S), without an ASSIGNED AGENT.
- [ ] The brokerage working with the BUYER(S) is acting as a LIMITED DUAL AGENT for the BUYER(S) and has an ASSIGNED AGENT acting solely on behalf of the BUYER(S).
- [ ] The brokerage working with the BUYER(S) is acting as a NONAGENT for the BUYER(S).

**Section 2:**
- [x] The brokerage working with the SELLER(S) is acting as an AGENT for the SELLER(S).
- [ ] The brokerage working with the SELLER(S) is acting as a LIMITED DUAL AGENT for the SELLER(S), without an ASSIGNED AGENT.
- [ ] The brokerage working with the SELLER(S) is acting as a LIMITED DUAL AGENT for the SELLER(S) and has an ASSIGNED AGENT acting solely on behalf of the SELLER(S).
- [ ] The brokerage working with the SELLER(S) is acting as a NONAGENT for the SELLER(S).

Each party signing this document confirms that he has received, read and understood the Agency Disclosure Brochure adopted or approved by the Idaho real estate commission and has consented to the relationship confirmed above. In addition, each party confirms that the brokerage's agency office policy was made available for inspection and review.

EACH PARTY UNDERSTANDS THAT HE IS A "CUSTOMER" AND IS NOT REPRESENTED BY A BROKERAGE UNLESS THERE IS A SIGNED WRITTEN AGREEMENT FOR AGENCY REPRESENTATION.

**22. Standard Terms.** All parties are advised to carefully review the following:
1. **Withdrawal of Offer/Counteroffer** – By delivery of a written notice of withdrawal to the office of the broker working with the Seller or Offeree (whether Buyer or Seller), (A) Buyer can withdraw this offer at any time prior to Buyer's receipt of Seller's written acceptance of this Agreement, and (B) an Offeror (whether Buyer or Seller) may withdraw his Counteroffer at any time prior to Offeror's receipt of Offeree's written acceptance of such Counteroffer.

2. **Closing Date** – On or before the Closing Date, Buyer and Seller shall deposit with the closing agency all funds and instruments necessary to complete the sale. Closing means the date on which all documents are either recorded or accepted by an escrow agent and the sale proceeds are available to Seller. Taxes, insurance, dues, assessments (using the last available assessment as a basis), rent, interest and reserves, liens, encumbrances or obligations assumed and utilities shall be pro-rated as of the Closing Date.

3. **Closing Costs** – Costs in addition to those listed may be incurred by Buyer and Seller. Unless otherwise agreed herein, or provided by law or required by lender, Buyer shall purchase Seller's reserve account if Seller's loan is assumed.

4. **Included Items** - If present at time of offer, all items attached, including but not limited to, floor coverings, television mounting brackets, satellite dishes, attached plumbing, bathroom and lighting fixtures, window screens, window coverings, screen doors, storm windows, storm doors, garage door opener(s), transmitter(s), exterior trees, plants, shrubbery, water heating apparatus and fixtures, attached fireplaces and free-standing fireplaces, awnings, ventilating, cooling and heating systems, built-in and drop-in ranges (but excepting all other ranges), built-in dishwasher(s), any alarms (burglar, fire, etc.), fences and gates, fuel tanks, mineral rights, irrigation fixtures and equipment, any and all water and water rights, and all ditches and ditch rights that are appurtenant thereto, shall be included in the sale unless otherwise provided herein.

5. **Seller's Property Disclosure** – If required by the Idaho Property Condition Disclosure Act, Idaho Code §55-2501 *et.seq.* ("IPCDA"), Seller shall, within ten (10) calendar days after the execution of this Agreement provide to the Buyer a completed "Seller's Property Disclosure Form" and if Buyer objects to any disclosure therein, Buyer shall have three (3) business days from receipt of the form to provide notice of rescission in accordance with the IPCDA.

6. **New Construction or Recent Improvements** - If Residential Property is newly constructed or has a recent improvement of over $2,000.00, the General Contractor is required by Title 45, Chapter 5, Idaho Code, to provide certain disclosures to the prospective residential real property purchaser. If applicable, Buyer should obtain such completed forms from the General Contractor. Such disclosure is the responsibility of the General Contractor and it is not the duty of your agent to obtain this information on your behalf. You are advised to consult with any General Contractor subject to Idaho Code §45-525 *et seq.* regarding the General Contractor Disclosure Statement.

Document #    MB-102-2022    Buyer's Initials _____ Date 2-10-22    Seller's Initials _____ Date 2-10-22
Date of Document    Feb 10, 2022    Buyer's Initials _____ Date 2-10-22    Seller's Initials _____ Date 2-10-22

3 of 8    This Real Estate Purchase and Sale Agreement is for the sole use of the members of the Sun Valley Board of REALTORS and is copyrighted as such. Version 8.2 * 11/2021
Serial#: 009473-800184-4508983
Prepared by: Mark Brown | Pioneer Associates | mark@markbrown.net | 2087264005

7. **Existing Loans** - Within th⬤(3) business days of acceptance, Seller ⬤ll provide Buyer with all Notes and Deeds of Trust or other financing documents to be assumed or taken subject to. Within five (5) business days of receipt thereof, Buyer shall in writing notify Seller of his / her approval or disapproval of the terms of said documents. Buyer's approval shall not be unreasonably withheld.

8. **Definitions** - "**Business Day**" shall mean Monday through Friday, excluding Saturday and Sunday, and excluding holidays as defined by Idaho Code, §67-5302. Business Days extend through 5:00 PM in the time zone in which the Property is located. "**Notice(s)**" shall mean a written document specifying the necessary information. "**Delivery**" shall mean transmittal of information by mail, facsimile transmission, courier, hand delivery, or e-mail, to the addresses stated herein. "**Receipt**" shall mean possession of the item of information by the named recipient or within the office of the appropriate broker. "**Written Acceptance**" shall mean receipt of a document signed and dated by all undersigned parties, specifying a certain Offer or Counteroffer. "**Signed**" shall mean a document containing the original, facsimile, electronic, photocopied or scanned signature of a party, any of which shall be binding on the signatory.

9. **Counterparts / Facsimile Transmission / E-mail** – This Agreement may be executed in one or more counterparts, each is deemed to be the original hereof, and all of which together constitute one and the same instrument. Facsimile or email transmission of any signed original document, and retransmission of any signed facsimile or email transmission shall be the same as personal delivery of the original. At the request of either party, or the Closing Agency, the parties will confirm facsimile or email transmitted signatures by signing an original document.

10. **Title Conveyance** – Title of Seller is to be conveyed by warranty deed, unless otherwise provided, and is to be marketable and insurable except for rights reserved in federal patents, state or railroad deeds, building or use restrictions, building and zoning regulations and ordinances of any governmental unit, and rights of way and easements established or of record. Liens, encumbrances or defects to be discharged by Seller may be paid out of purchase money at date of Closing. No liens, encumbrances, defects, except those which are to be discharged or assumed by Buyer or to which title is taken subject to, shall exist unless otherwise specified in this Agreement.

11. **Default by Buyer** – If the Buyer defaults in the performance of this Agreement, Seller will have the option of (1) accepting the Earnest Money as liquidated damages and this Agreement shall terminate; or (2) pursuing any other lawful right or remedy to which the Seller may be entitled, which may include specific performance. In the case of option (1), Seller shall make demand in writing upon the holder of the Earnest Money, upon which demand said holder shall pay from the Earnest Money any unpaid costs incurred by or on behalf of Seller and Buyer related to the transaction, as set forth in the "Costs To Be Paid By" section above, and said holder shall pay any remaining balance of the Earnest Money to the Seller. Notwithstanding the foregoing, if, pursuant to the terms of this Agreement, the Earnest Money has become non-refundable (except in the case of Default by Seller), the receipt of Earnest Money by Seller shall not be considered an election of remedies by Seller and the non-refundable Earnest Money shall not constitute liquidated damages, nor a waiver of other lawful remedies which may be available to Seller; it may, however, be used to offset any damages incurred by Seller. Seller and Buyer specifically acknowledge and agree that if Seller elects to accept the Earnest Money as liquidated damages, such shall be the Seller's sole and exclusive remedy, and such shall not be considered a penalty or forfeiture.

12. **Default by Seller** – It is agreed that if the title of said property is not marketable, or cannot reasonably be made so within twenty (20) business days after notice containing a written statement of defects is delivered to the Seller, or if the Seller defaults in the performance of this Agreement including Seller's obligations (if any) to correct defects pursuant to Paragraph 8) C of the Inspection Contingency, the Buyer has the option of (1) having the Earnest Money returned to the Buyer and this Agreement shall terminate; or (2) pursuing any other lawful right or remedy to which the Buyer may be entitled, including specific performance. In the case of option (1), the Buyer shall make demand in writing upon the holder of the Earnest Money. Upon such demand, and provided there is no dispute as to the Seller's default, said holder shall refund the Earnest Money to the Buyer. Seller shall pay for the unpaid costs incurred of title insurance and escrow fees, if any, and any unpaid costs incurred by or on behalf of the Seller and the Buyer related to the transaction, as set forth in this Agreement.

13. **Interpleader** – If a dispute arises as to Buyer's or Seller's default and entitlement to the Earnest Money, and such dispute is not resolved within ten (10) business days of a demand for payment of the Earnest Money by the Buyer or the Seller, the holder of the Earnest Money may file an interpleader action in a court of competent jurisdiction, and shall be entitled to recover its attorneys' fees and costs therefore, as provided by Idaho Code § 5-321.

| Document # | MB-102-2022 | Buyer's Initials | | Date | 2-10-22 | Seller's Initials | | Date | 2-10-22 |
| Date of Document: | Feb 10, 2022 | Buyer's Initials | | Date | 2-10-22 | Seller's Initials | | Date | 2-10-22 |

This Real Estate Purchase and Sale Agreement is for the sole use of the members of the Sun Valley Board of REALTORS and is copyrighted as such. Version 8.2 ™ 11/2021
Serial#: 809473-840164-4509945
Prepared by: Mark Brown | Pioneer Associates | mark@markbrown.net | 2087264005

14. **Attorney's Fees** – If either party initiates or defends any arbitration or legal action or proceedings, which are in any way connected with this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party reasonable costs and attorneys' fees including such costs and fees on appeal and in any bankruptcy proceeding.

15. **Risk of Loss** – Prior to Closing of this sale, all risk of loss shall remain with Seller. In addition, should the Property be materially damaged by fire or other cause prior to the Closing, this Agreement shall be voidable at the option of the Buyer. Buyer shall give written notice of intent to void the Agreement to Seller or Seller's Agent and shall be entitled to a full refund of the Earnest Money.

16. **Entire Agreement/Severability/Governing Law** – This Agreement, including all addendums hereto, constitutes the entire agreement of the parties with respect to the purchase and sale of the Property. All prior or contemporaneous agreements, understandings, representations, warranties and statements, whether oral or written, are superseded and shall not be binding on either party. If any provision of this Agreement is held to be illegal or invalid for any reason, the remaining provisions shall nevertheless be given full force and effect. This Agreement shall be interpreted and governed by the laws of the State of Idaho.

17. **EXCEPT AS EXPRESSLY STATED IN THIS AGREEMENT, SELLER MAKES NO WARRANTY OR REPRESENTATION OF ANY NATURE, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THOSE OF HABITABILITY (WHICH PROTECTS BUYERS AGAINST MAJOR DEFECTS WHICH ARE NOT READILY REMEDIABLE AND MAY RENDER A DWELLING UNINHABITABLE) WORKMANLIKE CONSTRUCTION, DESIGN, CONDITION, OR QUALITY AS TO THE PROPERTY, OR THE IMPROVEMENTS ON THE PROPERTY, AND SELLER HEREBY EXPRESSLY DISCLAIMS ANY SUCH REPRESENTATIONS OR WARRANTIES.** BUYER: _____

18. **Time is of the Essence in this Agreement.**

19. **Agent Representations** – The Agents representing the Buyer and Seller in this transaction relay information to Buyers and Sellers that has been received from third parties. However, Agents do not make any representations regarding flood plain, wetlands, avalanche zone, hazardous waste, environmental or health hazards, including, but not limited to, mold and radon, code compliance, survey data, finished square footage, property size, zoning or other physical factors nor do the Agents make any representations regarding law or taxation, unless specifically set forth in writing in this Agreement. The Buyer and Seller specifically waive all claims against the Agents regarding any of these matters which are not specifically included in this Agreement. It may be diligent and prudent for the Seller and/or Buyer to employ the services of qualified independent professionals who perform services or provide opinions regarding these matters, and the Agents may, during the course of this transaction, identify such individuals or entities. However, Agents are not warranting in any way the services or opinions provided by such individuals or entities, and the Buyer and Seller specifically waive any and all claims against the Agents regarding such identification.

20. **FIRPTA – Tax Withholding at Closing** – The parties agree that they shall fully comply with the Foreign Investment in Real Property Tax Act ("FIRPTA"). If Seller is not a "foreign person" under FIRPTA, at Closing, Seller shall sign an affidavit stating the same. If Seller is a "foreign person" under FIRPTA, at Closing the Closing Agent shall withhold from the sale proceeds the appropriate tax amount and submit such amount and any required forms to the Internal Revenue Service. Seller hereby indemnifies and holds Buyer and Closing Agent harmless from any and all liability, including attorney's fees, related to Seller's taxes under FIRPTA, or otherwise, which indemnification and hold harmless shall survive Closing of the transaction.

21. **AUTHORITY OF SIGNATORY:** If BUYER or SELLER is a corporation, partnership, trust, estate, or other entity, the person executing this agreement on its behalf warrants his or her authority to do so and to bind BUYER or SELLER.

In the event this form is received by electronic transmission and / or email, the parties hereto acknowledge that they have not changed or altered the content of this form template.

**23. WIRE FRAUD WARNING** When wiring funds, never rely exclusively on an email, fax, text, or social media message communication. Always personally call the receiving party to confirm that the transaction instructions are legitimate. Wiring money to a fraudulent address may result in the permanent loss of said funds without recourse and liability for failure to perform your obligations under the contract. The parties hereto agree that in the event a party uses, or authorizes the use of, wire transfers or other electronic transfers of money, that party hereby holds Broker, the Brokerage any of its agents harmless from any and all claims arising out of inaccurate instructions, fraudulent interception of funds, and/or any other damages arising from the transfer process or misappropriation of funds.

Document # ___MB-102-2022___   Buyer's Initials ____ Date _2-10-22_   Seller's Initials ____ Date _2-10-22_

Date of Document: ___Feb 10, 2022___   Buyer's Initials ____ Date _2-10-22_   Seller's Initials ____ Date _2-10-22_

7 of 8     This Real Estate Purchase and Sale Agreement is for the use of the members of the Sun Valley Board of REALTORS and is copyrighted as such. Version 8.2 * 11/2021

Serial: 009475-800194-4509485

Prepared by: Mark Brown | Pioneer Associates | mark@markbrown.net | 2087294005

**24. Buyer(s) Acceptance** Buyer hereby acknowledges having read this Agreement in its entirety, including the Standard Terms and all addendum(s), and having received a copy of this Agreement. _____ # of Addendum(s) attached

## THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT UNDERSTOOD, THE PARTIES ARE ADVISED TO SEEK THE ADVICE OF AN ATTORNEY.

| Buyer's Signature | | Buyer's Signature | |
|---|---|---|---|
| X | | X | |
| Signature | Date | Signature | Date |
| Printed Name: | Gerard Hart | Printed Name: | Heather Hart |
| Physical Address: | 5221 Musket Cove | Physical Address: | Same |
| Mailing Address: | | Mailing Address: | |
| City, State, Zip: | Austin, Texas 78738 | City, State, Zip: | |
| Home Phone: | | Home Phone: | |
| Business Phone: | 502 797 1010 | Business Phone: | 502 403 7666 |
| E-Mail: | gjhart1@gmail.com | E-Mail: | heatherahart@gmail.com |

**24. Seller(s) Acceptance** On the specified date, Seller acknowledges having read this Agreement in its entirety, including the Standard Terms and all addendum(s), and Seller hereby approves and accepts the offer to purchase set forth in the above Agreement.

☐ "AS-IS"  ☐ Subject to attached Counteroffer
Seller agrees to carry out all of the terms thereof on the part of the Seller and acknowledges receipt of a true copy of this Agreement signed by all parties.

| Seller's Signature | | Seller's Signature | |
|---|---|---|---|
| X | 2-10-22 | X | |
| Signature | Date | Signature | Date |
| Printed Name: | Gary Engman | Printed Name: | |
| Physical Address: | 30 Cheval Circle | Physical Address: | |
| Mailing Address: | P.O. Box 137 | Mailing Address: | |
| City, State, Zip: | Bellevue, Idaho 83313 | City, State, Zip: | |
| Home Phone: | | Home Phone: | |
| Business Phone: | 208 309 0300 | Business Phone: | |
| E-Mail: | gengmanllc@gmail.com | E-Mail: | |

8 of 8      This Real Estate Purchase and Sale Agreement is for the sole use of the members of the Sun Valley Board of REALTORS and is copyrighted as such. Version 8.2 * 11/2021
Serial#: 092251-400164-4670665
Prepared by: Mark Brown | Pioneer Associates : mark@markcbrown.net : 2087264005                                              Form



EXHIBIT 3

**Counteroffer** # __1__   Submitted by: ☐ Buyer ☒ Seller   Date of Counteroffer: __2/10/22__

This is a COUNTEROFFER to the Real Estate Purchase and Sale Agreement, identified as:
Document # __MB-102-2022__   Date of Document: __February 10, 2022__   Page _1_ of _1_
Property Address: __30 Cheval Circle Bellevue, ID 83313__

Buyer(s): __Gerard Hart and Heather Hart and/or assignee__

Seller(s): __Legacy Development Company__

If this is submitted by Seller, the Seller is the Offeror. If this is submitted by Buyer, the Buyer is the Offeror. All other terms and conditions of the Purchase and Sale Agreement and non-conflicting provisions of previous counteroffers to remain the same (see Counteroffers #_____.)

1. Purchase price to be $5,750,000.00 (Five Million Seven Hundred Fifty Thousand and Zero Cents)

2. Item #9: Inspection contingency to be completed within 30 days from written mutual acceptance. Inspection shall be conducted on a pass/fail basis only. No Seller repairs to be made other than the agreed upon items listed on Item 16 (additional terms).

3. Item #10: Seller delivered CCR's to Buyer on 2/10/2022. Buyer to have no CCR contingency.

4. Item #14: Should seller receive another acceptable offer to purchase prior to the release of all contingencies. Seller shall give Buyer written notice of such new offer. In the event the Buyer does not release the required contingencies in writing within 3 business days after the receipt of such notice then this agreement shall terminate and the earnest money shall be returned to the Buyer.

5. Item #16: $250,000 of the Sellers proceeds to be held by Escrow post closing until Seller can exhibit to Buyers Agent that all work orders on Item #16 have been completed. Seller has until until 6/1/2022 to complete. Upon acknowledgement that said repairs have been completed, money to be released immediately to Seller by Escrow.

6. Item #17: Buyer and Seller to handle the purchase of any personal items separately outside of this contract.

7. SOC commission to be $100,000.00 and LOC commission to be $140,000.00.

Counteroffer Expiration   Date: __February 10, 2022__   Time: __9:00PM__

**Other Terms:** This Counteroffer, upon its acceptance by both parties, is made an integral part of the aforementioned Agreement. Offeree accepts Offeror's changes or amendments to previous Counteroffer and agrees to sell on the above terms and conditions. Receipt of a copy hereof is hereby acknowledged.

**Other Offers:** If the Offeror is the Seller, the Seller reserves the right to withdraw this offer prior to Buyer's written acceptance of this Counteroffer. If the Offeror is the Buyer, the Buyer reserves the right to withdraw this offer prior to Seller's written acceptance of this Counteroffer.

Buyer's Signature _____   Buyer's Signature _____

X _____   __2/10/22__   X _____   __2.10.22 5:28p__
Signature   Date & Time   Signature   Date & Time

Seller's Signature _____   Seller's Signature _____

X _____   _____   X _____   __2.10.22 5:38p__
Signature   Date & Time   Signature   Date & Time

Serial# 046200-200164-4532112
Prepared by Melissa Tindall | Compass Mountain West LLC | melissa.tindall@compass.com | 4257654500

EXHIBIT
3



EXHIBIT 4





EXHIBIT 5



## RE-25 SELLER'S PROPERTY CONDITION DISCLOSURE FORM

JULY 2019 EDITION
Page 1 of 4



Seller's Name(s): **Legends Development Company LLC**      Date: **10/06/21**

Property Address: **30 Cheval Cir Bellevue, ID 83313**

Section 55-2501, et seq, Idaho Code, requires SELLERS of residential real property to complete a property condition disclosure form and deliver a signed and dated copy of the completed disclosure form to each prospective transferee or his agent within ten (10) calendar days of transferor's acceptance of transferee's offer. "Residential Real Property" means real property that is improved by a building or other structure that has one (1) to four (4) dwelling units or an individually owned unit in a structure of any size. This also applies to real property which has a combined residential and commercial use.

Notwithstanding that transfer of newly constructed residential real property that previously has not been inhabited is exempt from disclosure pursuant to section 55-2505 Idaho Code, SELLERS of such newly constructed and non-exempt existing residential real property shall disclose information regarding annexation and city services in the form as prescribed in questions 1, 2, and 3.

1  Is the property located in an area of city impact, adjacent or contiguous to a city limit, and thus legally subject to annexation by the city?
☐ Yes  ☒ No  ☐ Do Not Know  ☐ The property is already within city limits

2  Does the property, if not within city limits, receive any city services, thus making it legally subject to annexation by the city?
☐ Yes  ☒ No  ☐ Do Not Know  ☐ The property is already within city limits

3  Does the property have a written consent to annex recorded in the county recorder's office, thus making it legally subject to annexation by the city?
☐ Yes  ☒ No  ☐ Do Not Know  ☐ The property is a ready within city limits

THE PURPOSE OF THE STATEMENT This is a statement made by the SELLER of the conditions and information concerning the property known by the SELLER. **This is NOT a statement of any agent representing the SELLER and no agent is authorized to make representations, or verify representations, concerning the condition of the property.** Unless otherwise advised, the SELLER does not possess any expertise in construction, architectural, engineering or any other specific areas related to the construction or condition of the improvements on the property. Other than having lived at or owning the property, the SELLER possesses no greater knowledge than that which could be obtained upon careful inspection of the property by the potential BUYER. Unless otherwise advised, the SELLER has not conducted any inspection of generally inaccessible areas such as the foundation or roof. **This disclosure is not a warranty** of any kind by the SELLER or by any agent representing the SELLER in this transaction. It is not a substitute for any inspections. The BUYER is encouraged to obtain his/her own professional inspections.

THE FOLLOWING ARE IN THE CONDITIONS INDICATED:

| APPLIANCES SECTION | None/Not Included | Working | Not Working | Do Not Know | Remarks |
|---|---|---|---|---|---|
| Built-In Vacuum System | ☒ | | | | |
| Clothes Dryer | ☐ | ☒ | | | |
| Clothes Washer | ☐ | ☒ | | | |
| Dishwasher | ☐ | ☒ | | | |
| Disposal | ☐ | ☒ | | | |
| Refrigerator (3) | ☐ | ☒ | | | |
| Kitchen Vent Fan/Hood | ☐ | ☒ | | | |
| Microwave Oven | ☐ | ☒ | | | |
| Oven(s)/ Range(s)/Cook top(s) | ☐ | ☒ | | | |
| Trash Compactor | ☒ | | | | |
| ELECTRICAL SYSTEMS SECTION | None/Not Included | Working | Not Working | Do Not Know | Remarks |
| Security System(s) | ☐ | ☒ | | | |
| Garage Door Opener(s)/Control(s) | ☒ | | | | |
| Light Fixtures | ☐ | ☒ | | | |
| Smoke Detector(s)/Fire Alarm(s) | ☐ | ☒ | | | |
| Carbon Monoxide Detector(s) | ☐ | ☒ | | | |

SELLER'S Initials (_____)(_____)  Date 10/07/21      BUYER'S Initials (_____)(_____)  Date _____



EXHIBIT 5

JULY 2019 EDITION     RE 25 SELLER'S PROPERTY CONDITION DISCLOSURE FORM     Page 2 of 4

PROPERTY ADDRESS 30 Cheval Cir Bellevue, ID 83313

| HEATING & COOLING SYSTEMS SECTION | None/Not Included | Working | Not Working | Do Not Know | Remarks |
|---|---|---|---|---|---|
| Attic Fan(s) | ☒ | ☐ | ☐ | ☐ | NO ATTICS |
| Central Air Conditioning | ☒ | ☐ | ☐ | ☐ | |
| Room Air Conditioner(s) | ☒ | ☐ | ☐ | ☐ | |
| Evaporative Cooler(s) | ☒ | ☐ | ☐ | ☐ | |
| Fireplace(s) | ☒ | ☐ | ☐ | ☐ | |
| Fireplace Insert(s) | ☒ | ☐ | ☐ | ☐ | |
| Furnace/Heating System(s) | ☐ | ☒ | ☐ | ☐ | |
| Humidifier(s) | ☒ | ☐ | ☐ | ☐ | |
| Wood/Pellet Stove(s) | ☒ | ☐ | ☐ | ☐ | |
| Air Cleaner(s) | ☒ | ☐ | ☐ | ☐ | |

| FUEL TANK SECTION | NONE | | N/A ☐ | Propane ☐ | Oil ☐ | Diesel ☐ | Gasoline ☐ | Other ☐ |
|---|---|---|---|---|---|---|---|---|
| Location: | PIPED NATURAL GAS | | | | | Size | | |
| In Use ☐ | Not In Use ☐ | Above Ground ☐ | Buried ☐ | | Owned ☐ | | Leased ☐ | |

| MOISTURE & DRAINAGE CONDITIONS SECTION | Yes | No | Do Not Know | Remarks |
|---|---|---|---|---|
| Is the property located in a floodplain? | ☐ | ☒ | ☐ | |
| Are you aware of any site drainage problems? | ☐ | ☒ | ☐ | |
| Has there been any water intrusion or moisture related damage to any portion of the property including, but not limited to the crawl space, floors, walls, ceilings, siding or basement based on flooding, moisture seepage, moisture condensation, sewer overflow, backup or leaking pipes, plumbing fixtures, appliances, or moisture related damage from other causes? | ☐ | ☒ | ☐ | |
| Have you had the property inspected for the existence of any types of mold? | ☐ | ☒ | ☐ | |
| If the property has been inspected for mold, is a copy of the inspection report available? | ☐ | ☒ | ☐ | |
| Are you aware of the existence of any mold-related problems on any interior portion of the property including but not limited to floors, walls, ceilings, basement, crawl spaces, and attics or any mold related structural damage? | ☐ | ☒ | ☐ | |
| Have you ever had any water intrusion, moisture related damage, mold or mold-related problems on the property, remediated, repaired, fixed or replaced? | ☐ | ☒ | ☐ | |

| WATER & SEWER SYSTEMS SECTION | None/Not Included | Working | Not Working | Do Not Know | Remarks |
|---|---|---|---|---|---|
| Hot Tub/Spa and Equipment | ☐ | ☒ | ☐ | ☐ | |
| Pool and Pool Equipment | ☐ | ☒ | ☐ | ☐ | |
| Plumbing System — Faucets and Fixtures | ☐ | ☒ | ☐ | ☐ | |
| Water Heater(s) | ☐ | ☒ | ☐ | ☐ | |
| Water Softener (owned) | ☒ | ☐ | ☐ | ☐ | |
| Water Softener (leased) | ☒ | ☐ | ☐ | ☐ | |
| Landscape Sprinkler System | ☐ | ☒ | ☐ | ☐ | |
| Septic System | ☐ | ☒ | ☐ | ☐ | |
| Sump Pump/Lift Pump | ☒ | ☐ | ☐ | ☐ | |

| SEWER SYSTEM TYPE SECTION | Public System (City/Municipal) | Community System | Private System | Other/Remarks |
|---|---|---|---|---|
| Property Sewer Provided By | | | | |

| If a private system, please provide the following information about the septic system | Date Last Pumped JUNE 2021 | Is there a Maintenance Fee? ☐ Yes ☒ No | If Yes, list amount & explain monthly or annual fee? |
|---|---|---|---|

| | Yes | No | Do Not Know | Other/Remarks |
|---|---|---|---|---|
| If a private septic system, is there a shared drain field? | ☐ | ☒ | ☐ | |

SELLER'S Initials (_____)(_____) Date 10-26-21    BUYER'S Initials (_____)(_____) Date

The information contained herein is provided by a seller of the property and is not a warranty of any kind by the seller or any agent representing the seller in this transaction and is not a substitute for any inspection or warranty the buyer may wish to obtain.

JULY 2019 EDITION     RE-25 SELLER'S PROPERTY CONDITION DISCLOSURE FORM     Page 3 of 4

JULY 2019 EDITION                RE-25 SELLER S PROPERTY CONDITION DISCLOSURE FORM                Page 3 of 4

PROPERTY ADDRESS  30 Cheval Cir Bellevue, ID 83313

| WATER SOURCE & TYPE SECTION | Public System (City/Municipal) | Community System | Private System (Well, Cistern etc) | Other/Remarks |
|---|---|---|---|---|
| Domestic Water Provided By | | | ☒ | |
| Landscape Water Provided By | ☐ | | ☒ | 1882 WATER RIGHTS |
| Irrigation Water Provided By | ☐ | ☐ | ☒ | |

| | Yes | No | Do Not Know | Other/Remarks |
|---|---|---|---|---|
| Shared Well | ☐ | ☒ | ☐ | |
| Shared Well Agreement | | ☒ | | |

| ROOF SECTION. Age  2009  UNKNOWN ☐ | Yes | No | Do Not Know | Remarks |
|---|---|---|---|---|
| Is there present damage to the roof? | ☐ | ☒ | ☐ | |
| Does the roof leak? | | ☒ | ☐ | |

| SIDING SECTION: Age  1900  UNKNOWN ☐ | Yes | No | Do Not Know | antique barnboard Remarks |
|---|---|---|---|---|
| Are there any problems with the siding? | ☐ | ☒ | | |

| HAZARDOUS CONDITIONS SECTION | Yes | No | Do Not Know | Remarks |
|---|---|---|---|---|
| Are you aware of any asbestos radon or other toxic or hazardous materials on the property? | ☐ | ☒ | ☐ | |
| Is there a radon mitigation system? | ☒ | | ☐ | |
| Are you aware if the property has ever been used as an illegal drug manufacturing site? | ☐ | ☒ | ☐ | |
| Are you aware of any current or previous insect rodent or other pest infestation(s) on the property? | ☐ | ☒ | ☐ | |
| Have you ever had the property serviced by an exterminator or had the property otherwise remediated for insect rodent or other pest infestation(s)? | ☒ | ☐ | ☐ | |
| Is there any damage due to wind fire or flood? | ☐ | ☒ | ☐ | |

| OTHER DISCLOSURES SECTION | Yes | No | Do Not Know | Remarks |
|---|---|---|---|---|
| Are there any conditions that may affect your ability to clear title such as encroachments easements, zoning violations, lot line disputes, restrictive covenants etc ? | ☐ | ☒ | ☐ | |
| Has the property been surveyed since you owned it? | ☐ | ☒ | ☐ | |
| Have you received any notices by any governmental or quasi-governmental entity affecting this property i a Local improvement district (L D) or zoning changes, etc ? | ☐ | ☒ | ☐ | |
| Are there any structural problems with the improvements? | | ☒ | ☐ | |
| Are there any structural problems with the foundation? | ☐ | ☒ | ☐ | |
| Have any substantial additions or alterations been made without a building permit? | ☐ | ☒ | ☐ | |
| Has the fireplace/wood stove/chimney flue been cleaned? | ☐ | ☒ | ☐ | |
| Has the fireplace/wood stove/chimney flue been inspected? | ☐ | ☒ | ☐ | |

SELLER'S Initials (            )(    H    ) Date  10/26/21        BUYER'S Initials (            )(    H    ) Date _____

JULY 2019 EDITION                RE-25 SELLER S PROPERTY CONDITION DISCLOSURE FORM                Page 3 of 4

PROPERTY ADDRESS 30 Cheval Cir Bellevue, ID 83313

| OTHER DISCLOSURES SECTION | Yes | No | Do Not Know | Remarks |
|---|---|---|---|---|
| Are you aware or is there reason to believe that the home is located in a historic district or is a historic landmark? | ☐ | ☒ | ☐ | |
| Are all mineral rights appurtenant to the property included unencumbered and part of the sale of this property? | ☒ | ☐ | ☐ | |
| Has the home on this property ever been moved? | ☐ | ☒ | ☐ | |
| Have you ever filed a homeowner's insurance claim on the property? | ☐ | ☒ | ☐ | |
| Is there a Home/Condo Owner's Association? | ☐ | ☒ | ☐ | |
| Is there a private road to this property? | ☒ | ☐ | ☐ | |
| Is there a shared road agreement for this property? | ☐ | ☒ | ☐ | |

| ADDITIONAL REMARKS AND/OR EXPLANATIONS SECTION: | Yes | No | Do Not Know | If yes, explain in the lines below |
|---|---|---|---|---|
| Are you aware of any other existing problems concerning the property including legal, physical, product defects or other items that are not already listed? | ☒ | ☐ | ☐ | |

*pool needs liner repair or replacement - elevator is installed but*
*covered as back ordered - say failed windows will be replaced*

The SELLER certifies that the information here in is true and correct to the best of the SELLER'S knowledge as of the date signed by the SELLER. The SELLER is familiar with the residential property and each act performed in making a disclosure of an item of information is made and performed in good faith.

SELLER and BUYER understand and acknowledge that the statements contained herein are the representations of the SELLER regarding the condition of the property. No statement made herein is a statement of a SELLER'S agent or agents, and no agent is authorized to make any statement, or verify any statement, relating to the condition of the property. SELLER and BUYER also understand and acknowledge that SELLER in no way warrants or guarantees the above information regarding the property. SELLER and BUYER also understand and acknowledge that unless otherwise specifically set forth, no agent of the SELLER is an expert in environmental or other conditions which are or may be hazardous to human health, and which may exist on the property. BUYER MAY, AT BUYER'S OPTION AND EXPENSE, CONSULT WITH ANY INDEPENDENT QUALIFIED INSPECTOR TO ASSESS OR DETECT THE PRESENCE OF SUCH KNOWN OR SUSPECTED HAZARDOUS CONDITIONS.

SELLER and BUYER understand that Listing Broker and Selling Broker in no way warrant or guarantee the above information on the property.
SELLER hereby acknowledges receipt of a copy of this form.

SELLER _____ DATE 10/26/21    SELLER _____ DATE _____

BUYER hereby acknowledges receipt of a copy of this disclosure. BUYER may only exercise BUYER'S statutory right to rescind the purchase and sale agreement within three (3) business days following receipt of this disclosure statement by a written signed and dated document that is delivered to the seller or his agents by personal delivery, ordinary or certified mail, or facsimile transmission. Per statute BUYER'S rescission must be based on a specific objection to a disclosure in the disclosure statement. The notice of statutory rescission must specifically identify the disclosure objected to by the BUYER. If no signed notice of rescission is received by the SELLER within the three (3) business day period, BUYER'S statutory right to rescind is waived. The statutory rescission referenced in this section is separate and distinct from, and does not affect, any rescission, cancellation, or contingency term enumerated in any other written document related to this transaction including but not limited to the purchase and sale agreement.

BUYER _____ DATE _____    BUYER _____ DATE _____

AMENDED DISCLOSURE FORM. Subsequent to the delivery of the initial SELLER'S Property Condition Disclosure Form previously acknowledged, SELLER hereby makes the following amendments. (Attach additional pages if necessary.) Other than those amendments made below, the SELLER states that there have been no changes to the information contained in the initial SELLER'S Property Condition Disclosure Form. IF THERE ARE NO UPDATES THERE IS NO NEED TO SIGN BELOW.

SELLER hereby acknowledges receipt of this amended form.

SELLER _____ DATE _____    SELLER _____ DATE _____

BUYER hereby acknowledges receipt of a copy of this amended disclosure. BUYER may only exercise BUYER'S statutory right to rescind the purchase and sale agreement within three (3) business days following receipt of this amended disclosure statement by a written signed and dated document that is delivered to the seller or his agents by personal delivery, ordinary or certified mail, or facsimile transmission. Per statute BUYER'S rescission must be based on a specific objection to a disclosure in the disclosure statement. The notice of statutory rescission must specifically identify the disclosure objected to by the BUYER. If no signed notice of rescission is received by the SELLER within the three (3) business day period, BUYER'S statutory right to rescind is waived. The statutory rescission referenced in this section is separate and distinct from, and does not affect, any rescission, cancellation, or contingency term enumerated in any other written document related to this transaction including but not limited to the purchase and sale agreement.

BUYER _____ DATE _____    BUYER _____ DATE _____



EXHIBIT 6

S.V.   STARSHIP

2/15/22

EXHIBIT
10

① WINDOWS ARE ORDERED & PAID FOR

Estimated install date - March 15

outside finish date April 1

(NUVU GLASS TWIN FALLS ID.)

② ELEVATOR EQUIPMENT & SAFETY CONTROLS ARE

IN AND READY FOR INSTALLATION

NW ELEVATOR   BOISE & CDA   IDAHO

outside FINISH DATE APRIL 1

③ POOL WATER SEALING NEW LINER
(NEED 50° PLUS AIR TEMP) EST. COMPLETE MAY 1

A. RUBBER/POLY SPRAY COAT (4COATS) ON POOL
WALLS & FLOOR (LIGHT GREEN) OR (DESERT TAN)
ORDED FROM "AMES" ENVIRO "BLUE MAX LIQUID RUBBER)

B. HEAVY CUSTOM LINER TO FIT POOL EXACTLY (TAN)
ORDERED FROM WESTERN ENVIRO LINER
(45 MILL REINFORCED POLY ETHYLENE). STAIRS & RAILING
FABRICATOR CAN START UPON YOUR (GJs) DIRECTION.

C. CIELING OF 4TH FLOOR ~~~~ WILL ALSO BE SPRAY
COATED WITH "BLUE MAX" (4COATS). CAN BE
PAINTED AFTER CURING. THE "BLUE MAX" IS
STONGER THAN RHINO OR LINE-X PRODUCTS AND
WILL GUANTEE WATER PROOFING (FLOOR OF POOL & 4TH FLOOR CIELING)

D. THE PUMPS, FILTERS, SHIMMERS, VACUMNS AND
HYDRONIC HEAT PIPES WILL BE RE-TESTED AND
OPEATING.

④ ALL DOORS WILL BE SEALED AND LUBRICATED (MARCH 1.
(THE HOUSEKEER - GROUNDSMAN & MASTER CARPENTER ARE AVAILBL

⑤ ⑥ RESTORATION LUMBER IS PROVIDING 2000" OF CEDAR BOARDS
AT N/C. TWO SMALL CIELING AREAS HAVE STAINING I WILL
REPLACE @ NO COST. ALSO ANTIQUE POSTS FOR BUNK ROOM @ N/C.

W Engman (GARY)



EXHIBIT 7

STAR! ip PROJECTS-COMPLETIONS
PROJECTIONS - 3/22/20
SCHEDULE To COMPLETION

| Prepared By | Initials | Date |
|---|---|---|
| Approved By | | |

© WILSON JONES   G7203 GREEN

| | Date | Task | Projected Completion Date | Deliveries To Starship | Complete Date |
|---|---|---|---|---|---|
| ① | 3/22 | DOORS SEALED-LUBE-FINISH | 3/22/22 | SEALANT | 3/22/22 |
| 2 | 3/23 | POOL SEALANT | | | |
| 3 | 3/24 | POOL SEALANT | | | |
| 4 | 3/25 | POOL SEALANT | | | |
| 5 | 3/26 | FLOOR #4 CEILING SEALED | | | |
| 6 | 3/27 | FINAL ELEVATOR PARTS ARRIVE | | ELEV-PARTS | |
| 7 | 3/28 | FLOOR #4 CEILING SEALED | | | |
| ② | 3/29 | FINISH POOL & CEILING SEALED | 3/30/20 | | |
| 9 | 3/30 | POOL LINER ARRIVES IN BELLEVUE | | POOL LINER | |
| 10 | 3/31 | INSTALL POOL LINER | | CRANE | |
| 11 | 4/1 | INSTALL POOL LINER | | MANLIFT | |
| 12 | 4/2 | FILL & TURN ON HOT TUB | | | |
| ③ 13 | 4/3 | POOL COMPLETE & FILLED | 4/3/22 | | |
| 14 | 4/4 | POOL PLUMBING TO NEW LINER | | | |
| 15 | 4/5 | POOL PLUMBING TO NEW LINER | | | |
| 16 | 4/6 | INSTALL ELEVATOR PARTS | | | |
| 17 | 4/7 | INSTALL ELEVATOR PARTS | | | |
| 18 | 4/8 | INSTALL ELEVATOR PARTS | | | |
| ④ 19 | 4/9 | ELEVATOR OPERATIONAL | 4/10/22 | | |
| 20 | 4/10 | | | | |
| 21 | 4/11 | WINDOWS ARRIVE IN BELLEVIEW | | | |
| 22 | 4/12 | INSTALL WINDOWS | | | |
| 23 | 4/13 | INSTALL WINDOWS | | | |
| 24 | 4/14 | INSTALL WINDOWS | | | |
| 25 | 4/15 | INSTALL WINDOWS | | | |
| 26 | 4/16 | | | | |
| 27 | 4/17 | | | | |
| 28 | 4/18 | WASH WINDOWS | | CRANE | |
| 29 | 4/19 | WASH WINDOWS | | MANLIFT | |
| ⑤ 30 | 4/20 | WINDOWS COMPLETE | 4/21/22 | | |
| 31 | 4/21 | FINAL PUNCH LIST | | | |
| 32 | 4/22 | FINAL PUNCH LIST | | | |
| 33 | 4/23 | (SIX DAYS OF FINAL PUNCHLIST) | | | |
| 34 | 4/24 | | | | |
| 35 | 4/25 | FINAL PUNCHLIST | | | |
| 36 | 4/26 | FINAL PUNCHLIST | | | |
| 37 | 4/27 | FINAL PUNCHLIST | | | |
| 38 | 4/28 | FINAL PUNCHLIST | | | |
| 39 | 4/29 | ALL CONTRACT REPAIRS COMPLETE | 4/29/22 | | |
| 40 | 4/30 | | | | |
| | 5/2 | CLOSING (IF YOU WANT TO CLOSE) | | | |

EXHIBIT
7