UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERARD J. HART, solely in his capacity as Trustee of the GERARD AND HEATHER HART LIVING TRUST dated February 28, 2014, and HEATHER ANN HART, solely in her capacity as Trustee of the GERARD AND HEATHER HART LIVING TRUST dated February 28, 2014,<br><br>        Plaintiffs,<br><br>v.<br><br>LEGENDS DEVELOPMENT COMPANY, a Wyoming corporation; and GARY J. ENGMAN, an individual,<br><br>        Defendant. | Case No. 1:22-cv-00323-CWD<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

**INTRODUCTION**

This matter came before the Court on Plaintiffs' First Motion for Entry of Judgment upon the Defendants' default. (Dkt. 77.) Pursuant to Fed. R. Civ. P. 55(b)(2), the Court received evidence, both oral and documentary, at a hearing conducted on August 7, 2024. At the close of evidence, counsel was afforded an opportunity to present a summation. The Court took the matter under advisement, but allowed Plaintiffs the opportunity to submit briefing regarding the remedy sought within five days.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 1**

Following a recitation of the procedural background, the Court will set forth its

findings of fact, followed by its conclusions of law.

## PROCEDURAL BACGROUND

1.      Plaintiffs filed a verified complaint against Defendants on June 28, 2022, in the

District Court of the Fifth Judicial District of the State of Idaho, in and for the County of

Blaine.

2.      The Complaint alleges: Breach of Contract; Breach of Implied Duty of Good Faith

and Fair Dealing; Violation of the Idaho Property Condition Disclosure Act, Idaho Code

§ 55-2502, *et. seq*.; Violation of the Idaho Consumer Protection Act, Idaho Code § 48-

603(17); Fraud; and Rescission. In the alternative, Plaintiffs seek specific performance.

3.      The Complaint alleges that there exists:

> [A] unity of interest in Legends Development Company and
> Gary J. Engman such that their individuality and separateness
> does not exist. Legends Development Company is a mere
> shell of an entity and the alter ego of Gary J. Engman, which
> Gary J. Engman has used as a conduit for his own personal
> and business affairs. Adhering to the fiction that Legends
> Development Company has a separate and distinct existence
> apart from Gary J. Engman would perpetrate a fraud against
> Plaintiffs, promote injustice, yield an inequitable result, and
> constitute an abuse of corporate privilege.

Compl. ¶ 7. (Dkt. 1-1.)

4.      The Complaint seeks damages, or alternatively, specific performance of the

Agreement, and includes a prayer for relief for interest, attorney fees and costs pursuant

to Idaho Code §§ 12-120, 12-121, 45-501, and Idaho R. Civ. P. 54.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 2**

5.      Defendants filed a notice of removal based on diversity jurisdiction to the Court on July 29, 2022. (Dkt. 1.)

6.      Defendants filed an Answer to the Complaint on August 5, 2022. (Dkt. 7.)

7.      Defendants deny the allegations in paragraph 7 of the Complaint, with the following exception: "Defendant Gary J. Engman is the President of Legends Development Company." Ans. ¶ 9. (Dkt. 7.)

8.      The parties consented to proceed before a United States Magistrate Judge on September 26, 2022. (Dkt. 16.)

9.      On December 21, 2022, Defendants' attorney filed a motion to withdraw, which motion was granted. (Dkt. 23.)

10.      Defendants failed to appear, and the Clerk entered default on January 19, 2023. (Dkt. 27.)

11.      On March 6, 2023, Defendants entered an appearance through counsel, and moved to set aside the default.

12.      The Court granted Defendants' motion to set aside the default on May 23, 2023. (Dkt. 49.)

13.      Shortly thereafter, Defendants' attorney moved to withdraw on June 26, 2023. (Dkt. 54.)

14.      The Court granted the motion to withdraw on June 27, 2023. (Dkt. 56.)

15.      Defendants did not appear, and Plaintiffs moved for entry of default on July 20, 2023. (Dkt. 59.)

16.      The Clerk entered default on July 26, 2023. (Dkt. 60.)

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 3**

17.    Defendants thereafter entered an appearance through counsel on August 9, 2023. (Dkt. 61.)

18.    Defendants moved to set aside the default on August 29, 2023. (Dkt. 62.)

19.    The Court denied Defendants' motion to set aside the default on October 31, 2023. (Dkt. 71.)

20.    Defendants' attorney moved to withdraw on March 29, 2024, and the motion was granted on April 2, 2024. (Dkt. 75, 76.)

21.    Plaintiffs moved for entry of default judgment on April 22, 2024. (Dkt. 77.)

22.    Defendants did not appear in this action following the last withdrawal of counsel.

23.    The Court conducted an evidentiary hearing on the motion for default judgment on August 7, 2024. (Dkt. 89.)

24.    Defendants received notice of the hearing, but did not appear.

25.    Plaintiff Heather Hart and Preston Ziegler of Sawtooth Construction, Inc. testified at the hearing.

26.    Plaintiffs submitted also declarations from Heather Hart, Edward Lawson, and Preston Ziegler with their motion for default judgment. (Dkt. 77.)

27.    Plaintiffs seek $1,126,238.16 in monetary damages; $75,214.18 in attorney fees and costs up through April 22, 2024; an additional $10,000.00 in estimated attorney fees through the conclusion of the evidentiary hearing; prejudgment interest in the amount of $321,420.03; and an order directing Pioneer Title to release to Plaintiffs the $141,370.65 held in escrow. (Dkt. 88.)

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 4**

# FINDINGS OF FACT

28.　　Plaintiffs Gerard J. Hart and Heather Ann Hart are Trustees of the Gerard and Heather Ann Hart Living Trust dated February 28, 2014, and are residents of Texas. Compl. ¶¶ 1, 2; Notice of Removal. (Dkt. 1.)

29.　　Defendant Legends Development Company ("Legends") is a Wyoming corporation with headquarters in Jackson, Wyoming. (Dkt. 1.)

30.　　Gary J. Engman is the President and registered agent of Legends, and he resides in the state of Wyoming. Ans. ¶¶ 8, 9

31.　　Prior to its purchase by Plaintiffs in the spring of 2022, Legends was the registered owner of 30 Cheval Circle, Belleview, Idaho (the "Property"), also known locally as the "Starship" because of its unique modern design. Compl. ¶¶ 12, 13; Ans. ¶¶ 13, 14.

32.　　The Harts first viewed the Property on Realtor.com.[1]

33.　　The Harts personally viewed the Property before making an offer to purchase it.

34.　　Prior to making an offer to purchase the Property, Heather Hart received form RE-25, Seller's Property Condition Disclosure form, as part of the listing package from her realtor.

35.　　The Seller's Property Condition Disclosure form identified the seller of the Property as "Legends Development Company," was signed by Gary Engman, and was dated October 26, 2021. Ex. 9.

---

[1] Heather Hart did not indicate when she first accessed Realtor.com

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 5**

36.     On the Seller's Property Condition Disclosure form, Gary Engman represented the following:

    a.  Dishwasher – working

    b.  Disposal – working

    c.  Kitchen Vent Fan/Hood – working

    d.  Oven(s)/Range(s)/Cook top(s) - working

    e.  Security Systems - working

    f.  Light Fixtures – working

    g.  Smoke Detectors/Fire Alarms – working

    h.  Carbon Monoxide Detectors – working

    i.  Have you ever had any water intrusion, moisture related damage, mold or mold-related problems on the property remediated, repaired, fixed or replaced? – No

    j.  Hot Tub/Spa and Equipment – working

    k.  Pool and Pool Equipment – working

    l.  Water Heater – working

    m.  Septic System – working

    n.  Sump Pump/Lift Pump – working

    o.  Roof Section: Age – 2009

    p.  Is there present damage to the roof? – No

    q.  Does the roof leak? – No

     r.   Are you aware of any current or previous insect, rodent or other pest infestation(s) on the property? – No

     s.   Are you aware of any other problems concerning the property including legal, physical, product defects or other items that are not already listed? – Yes. "Pool needs liner repaired or replacement – elevator is installed but controls are back ordered. Any failed windows will be replaced."

37.    As Seller, Legends certified that the information "herein is true and correct to the best of the Seller's knowledge as of the date signed by the Seller. Seller is familiar with the residential property and each act performed in making a disclosure of an item of information is made and performed in good faith."

38.    The Seller's Property Condition Disclosure form also contained the following statement:

> This is a statement made by the Seller of the conditions and information concerning the property known by the Seller….Unless otherwise advised, the Seller does not possess any expertise in construction, architectural, engineering or any other specific areas related to the construction or condition of the improvements on the property. Other than having lived at or owning the property, the Seller possesses no greater knowledge than that which could be obtained upon careful inspection of the property by the potential Buyer. Unless otherwise advised, the Seller has not conducted any inspection of generally inaccessible areas such as the foundation or roof. This disclosure is not a warranty of any kind by the Seller or by any agent representing the Seller in this transaction. It is not a substitute for any inspections. The Buyer is encouraged to obtain his/her own professional inspections.

Ex. 9.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 7**

39.    On February 10, 2022, Gerard Hart and Heather Hart and/or Assigns (Husband and Wife) ("Buyers") executed a Purchase and Sale Agreement setting forth the terms of their offer to purchase the Property from Seller, "Legacy Development Company." Ex. 4. Ans. ¶ 15.

40.    The Broker working with the Seller was Christina Nelson, of Compass Mountain West, LLC, 360 East Ave. N. Unit 2 & 3, Ketchum, Idaho 83340.

41.    The Broker working with the Buyers was Mark C. Brown, of Pioneer Associates R.E. Brokers, P.O. Box 5618, Ketchum, Idaho 83340.

42.    According to Heather Hart, her realtor made an error when identifying the Seller on the Purchase and Sale Agreement, as it should have been Legends Development Company.[2]

43.    The salient terms of the offer were: purchase price of $5,500,000.00; earnest money of $100,000.00; and, a closing date "no longer than 90 days from mutual acceptance," with possession transferred upon closing.

44.    Costs identified as payable by Buyers included:

    a.  Appraisal

    b.  Well Inspection

    c.  Septic Inspection

    d.  Septic Pumping

---

[2] This is evidenced by addenda to the Purchase and Sale Agreement and other related documents.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 8**

45.    The offer was subject to an inspection contingency, and provided Buyers with 30 days within which to "investigate all material conditions affecting the Property…."

46.    Pursuant to the inspection contingency clause, Buyers had the option of giving one of the following written notices to Seller: (1) notice of the conditions or defects to which Buyers object and declaring the Agreement null and void, in which case the Earnest Money was to be refunded to Buyers; or, (2) notice of the conditions or defects to which Buyers object and Buyers' desired remedy.

47.    If Buyers elected option 2, upon receipt of such notice Seller had three business days to give Buyers written notice by signing the "Buyer's Contingency Release form" that Seller will correct all such conditions or defects, or identify such conditions or defects that would not be corrected.

48.    If the Contingency Release was subject to corrections to be performed by Seller, "Buyer shall be entitled to conduct a walkthrough prior to Closing to confirm completion of the agreed upon corrections. Buyer's closing of the transaction shall constitute acceptance of the condition of the Property, unless otherwise stated in writing signed by both parties."

49.    Paragraph 16 of the of the Purchase and Sale Agreement contained the following additional terms:

    a.    Buyer to deposit an additional $150,000.00 upon removal of all contingencies. At that time all earnest monies shall become nonrefundable.

    b.    Seller agrees to complete the work on the elevator. Seller agrees to install a new pool liner and also repair the leaks in the ceiling below the pool. Seller

to replace all damaged windows. Seller to repair any doors that need

repairing.

50.    Paragraph 22.5 of the Purchase and Sale Agreement provided: "Seller shall, within

ten (10) calendar days after the execution of this Agreement provide to the Buyer a

completed 'Seller's Property Disclosure Form' and if Buyer objects to any disclosure

therein, Buyer shall have three (3) business days from receipt of the form to provide

notice of rescission in accordance with the [Idaho Property Condition Disclosure Act]."

51.    Paragraph 22.12 of the Purchase and Sale Agreement provided that, if Seller

defaulted in the performance of the Agreement, including Seller's obligations to correct

defects pursuant to the Inspection Contingency, Buyer had the option of having the

Earnest Money returned to the Buyer and terminating the agreement, or pursuing any

other lawful right or remedy to which the Buyer may be entitled, including specific

performance.

52.    Paragraph 22.17 of the Purchase and Sale Agreement included the following

acknowledgement:

> Seller makes no warranty or representation of any nature,
> express or implied, including, but not limited to, those of
> habitability (which protects buyers against major defects
> which are not readily remediable and may render a dwelling
> uninhabitable) workmanlike construction, design, condition,
> or quality as to the property, or the improvements on the
> property, and Seller hereby expressly disclaims any such
> representations or warranties.

53.    On February 10, 2022, Gary Engman accepted all terms of the Buyers' offer

subject to Counteroffer #1 (Ex. 5) containing the following terms:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 10**

    a. Purchase price to be $5,750,000.00.

    b. "Item #16: $250,000 of the Sellers proceeds to be held by Escrow post closing until Seller can exhibit to Buyers Agent that all work orders on item #16 have been completed. Seller has until 6/1/2022 to complete. Upon acknowledgement that said repairs have been completed, money to be released immediately to Seller by Escrow."

54. The counteroffer was timely accepted by Buyers.

55. The responsible closing agency was Pioneer Title Inc.

56. On or about February 16, 2022, Tanner Sanders of Method Home Inspection inspected the Property on behalf of the Buyers. Ex. 85. The inspection report identified the following defects:

    a. Damaged decking boards – damaged deck boards were observed. Recommend evaluation and repair or replacement by a qualified professional.

    b. Weatherstripping – weatherstripping on garage doors is detached or damaged and needs repair or replacement.

    c. Panels – Legend Missing, Substandard – The legend for circuit breakers in panel was incomplete. This is a potential shock or fire hazard in the event of an emergency when power needs to be turned off. Recommend correcting the legend so it's accurate, complete and legible. Evaluation by a qualified electrician may be necessary.

    d. Panels – Cover Locked at the Main Panel – This panel is excluded from the inspection. Recommend that repairs, modifications and/or cleanup should be made as necessary so panels can be opened and fully evaluated.

    e. Receptacles – GFCI Defect – One ground fault circuit interrupter (GFCI) device protecting receptacles at the bathroom (3rd floor bedroom bathroom) was unable to be tested because the button was stuck. This is a potential shock hazard. Recommend that a qualified electrician evaluate and repair as necessary.

    f. Drain and Waste Lines – Lines – One or more drain pipes were cracked/broken. Recommend that a qualified plumber evaluate and repair

**FINDINGS OF FACT AND CONCLUSIONS OF LAW - 11**

as necessary and per standard building practices. The owner stated he would be repairing these pipes.

g. Plumbing/Fuel Systems – Drain and Waste lines: Drain pipe condition – appeared serviceable, minor repair; Sump Pump Condition – appeared serviceable. Sewage Ejector Pump Condition – appeared serviceable.

h. Fuel Systems – Leaking – Based on gas odors, gas appeared to be leaking at the meter. This is an explosion and fire hazard. A qualified contractor and/or the gas utility company should evaluate and repair immediately.

i. General – Unknown, May Be Old – the estimated useful life for most water heaters is 8 – 12 years. The inspector was unable to determine the age of the water heater due to the manufacturer's label being obscured, no serial number being visible, or the serial number not clearly indicating the age. The client should be aware that this water heater may be near, at or beyond its useful life and may need replacing at any time. Recommend attempting to determine the water heater's age. The owner stated the water heater was from 2010 which would be this unit right at its service life. The owner stated that the unit has been serviced in the last few months and no issues were found. Recommend budgeting for replacement in the future.

j. Water Shut Off – Corrosion – Corrosion on water shut off. Not currently leaking, however leaks can occur. A qualified repair person should evaluate and repair if necessary.

k. Heating, Venting and Air Conditioning (HVAC) – Heating Type – Radiant. Burners (furnace or boiler): appeared serviceable.

l. Dishwasher – Not Plugged In – The dishwasher was unable to be tested due to it not being plugged in. Recommend asking the owner about its functionality and getting a qualified person to repair if necessary.

m. Ventilation – No Hood or Fan – No exhaust hood, ceiling or wall-mounted exhaust fan or downdraft exhaust system was found for the cook top or range. This can be a nuisance for odor and grease accumulation. Consider installing a venting system if wanted.

n. Showers – Handles – handles controlling water flow to the shower (1st Floor Bathroom #2) were missing. Recommend that a qualified person repair or replace handles as necessary.

o. Unfinished – the 2nd floor bathroom shower was unfinished and most typical bathroom components were not present and/or installed.

p. Interior Doors – Door Difficult to Open/Close – One or more interior doors were difficult to open/close. Recommend that a qualified person replace or repair doors as necessary.

q. Windows & Skylights – Cranks – Crank handles at one or more windows were loose. Replace handles as necessary.

r. Windows & Skylights – Fogging, Condensation Between Glass – Condensation or staining was visible between multi-pane glass in the 3rd floor office windows. This usually indicates that the seal between the panes

of glass has failed or that the desiccant material that absorbs moisture is saturated. As a result,…the window's R-value will be reduced, and accumulated condensation may leak into the wall structure below. The owner stated that these windows will be replaced.

s. Windows & Skylights – Window Broken – Glass in one of the 3rd floor office windows was cracked, broken. Recommend that a qualified contractor replace glass where necessary. The owner stated this window will be repaired.

t. Walls, Ceilings and Fixtures – Wet Stains – Stains and elevated levels of moisture were found in one area (4th floor office, 3rd floor office). Recommend that a qualified contractor evaluate and repair as necessary. The owner stated that these areas would be repaired, as well as the pool lining to prevent further leaks.

u. Electric – wiring condition – serviceable; smoke and CO alarms: CO and smoke alarms installed – Yes.

57. On March 10, 2022, Heather Hart executed the Contingency Release. Ex. 7. The Contingency Release identified Buyers as "Gerard Hart and Heather Hart and/or assigns," and Seller as "Gary Engman."

58. The Inspection Contingency Release box was checked, indicating: "Buyer has satisfied or waives this contingency subject to: completion of agreed upon repair of items and task described in paragraph [sic] 6 of the Purchase Agreement."

59. The reference to paragraph 6 of the Purchase Agreement in the Contingency Release was an obvious error, and should have referred to paragraph 16.

60. On March 11, 2022, Addendum #1, identifying the Buyers as "Gerard Hart and Heather Hart and/or assigns," and Seller as "Gary Engman," was executed by Gary Engman and Gerard Hart. Ex. 6. The Addendum modified the Purchase and Sale Agreement as follows:

a. Buyers and Seller agree to extend the closing to no later than June 30, 2022.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 13**

    b.   "Buyers and Seller agree that the Seller shall try to complete all repairs and task described in paragraph [sic] 6 of the purchase and sale agreement prior to closing. Buyers and Seller agree that the Seller will complete all repairs and tasks to the Buyers full satisfaction before June 30, 2022. If not completed then the closing will be moved back accordingly."

61.    On March 22, 2022, Engman provided Plaintiffs with a schedule for "Starship Projects Completions" – which included a line item listing of repairs that Engman agreed to undertake and to perform prior to closing with a specific performance notation stating, "ALL CONTRACT REPAIRS COMPLETE 4/29/22." Compl. ¶ 24, Ex. 7; Ans. ¶ 25.

62.    On March 26, 2022, Gary Engman, Heather Hart, and Gerard Hart executed Addendum #2. Ex. 8. Addendum #2 identified Buyers as "Gerard Hart and Heather Hart and/or assigns," and Seller as "Gary Engman."

63.    Addendum #2 modified the terms of the Purchase and Sale Agreement, and all prior addendums, as follows:

    a.   "Buyers agree to release the nonrefundable earnest money to the Seller via Pioneer Title Inc. This will take place after both Buyers and Seller sign this agreement."

    b.   "Seller agrees to hold back $250,000 at closing to finish or repair any items that have not been completed. These items to be completed as stated in paragraph [sic] 6 of the Purchase and Sale Agreement. When the Seller signs off on the completion list, then the balance shall be refunded to the Seller."

64.    The work was not completed as agreed.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 14**

65.     Gerard and Heather Ann Hart assigned their rights under the purchase and sale

agreement to the Trustees of the Gerard and Heather Ann Hart Living Trust dated

February 28, 2014 (the "Trust"). (uncontested testimony of Heather Hart).

66.     Closing occurred on the Property on May 23, 2022, according to Pioneer Title

Inc.'s Posting Summary. Ex. 12. On the Posting Summary, Buyers were identified as:

Gerard J. Hart and Heather Ann Hart, trustees, or their successors in interest, of the

Gerard and Heather Hart Living Trust dated February 28, 2014, and any amendments

thereto. Seller was identified as Legends Development Company, a Wyoming

Corporation.

67.     Also on May 23, 2022, Gary Engman, as President of Legends Development

Company, and Trustees Gerard J. Hart and Heather Ann Hart, executed Withhold

Instructions. Ex. 11. The parties entered into an Escrow Agreement for the purpose of

escrowing funds in the amount of $250,000.00, from the Seller's net proceeds to ensure

completion of the work on the Property as described in Addendum #2. Ex. 11.

68.     The Escrow Agreement (Ex. 11) contained the following provisions:

    a.  The Seller/Contractor additionally agree that they are personally liable to
the Purchaser/Owner for the completion of the work, free and clear of all
liens, and that this undertaking is additional to and not in lieu of any other
covenants or warranties that may exist between the parties.
Seller/Contractor agrees to pay for all labor and material necessary for
completion of the work, and the work is to be finished free and clear of all
liens, encumbrances, or unpaid obligations, as all such matters shall be the
sole obligation and responsibility of Seller/Contractor.

    b.  It is understood that all work will be completed no later than 12/1/2022.
Upon the Escrow Holder's receipt of a written confirmation from the
Purchaser/Owner as to the completion of the work OR upon the Escrow
Holder's receipt of written instructions from the Purchaser's lender…the

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 15**

Escrow Holder is directed to release the withheld funds as follows: Restoration Lumber, PO Box 137, Bellevue, ID 83313.

c.  In the event that the above-described work is not completed by the required date, or in the event that any dispute arises between the principals hereto or with any third party, the Escrow Holder is hereby authorized and directed after sixty (60) days from the agreed-upon completion date, to disburse all escrow funds in the above-numbered escrow, pursuant to this agreement, in the form of cashier's check payable to BOTH BUYER AND SELLER and deliver to: Pioneer Associates, PO Box 5618, Ketchum, ID  83340. Escrow Holder shall pay no interest to Seller/Contractor, Purchaser/Owner, or any other party on account of the funds held in escrow pursuant to this agreement.

69.    Title to the Property was acquired in the name of the Trust.

70.    Restoration Lumber is an entity affiliated with Gary Engman. (Uncontested testimony of Heather Hart.)[3]

71.    Plaintiffs had hired Sawtooth Construction, Inc. ("Sawtooth") to perform work on the Property.

72.    The closing summary indicated that $108,629.35 was paid to Sawtooth for repairs to the Property.

73.    The $108,629.35 paid to Sawtooth was deducted from the $250,000.00 escrow holdback.

74.    There remains $141,370.65 of the $250,000.00 escrow holdback in escrow.[4]

---

[3] No further testimony or other evidence was submitted indicating whether Restoration Lumber would be completing repairs, or what the relationship was between Restoration Lumber and Gary Engman.
[4] Although the Escrow Agreement required the escrow holder to deliver to Pioneer Associates all escrowed funds after sixty days from December 1, 2022, in the form of a cashier's check payable to both Buyer and Seller, according to the Declaration of Edward Lawson "there remains $141,370.65 of these holdback monies in escrow." Decl. of Lawson ¶ 11. *See also* Pls.' Brief at 4 (Dkt. 88) (indicating Pioneer Title Company is currently holding $141,370.65 in escrow from the "holdback monies" under the purchase and sale agreement).

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 16**

75.    Repairs to the elevator, windows, and pool were not completed by December 1, 2022.

76.    As of December 1, 2022:

   a.  The elevator does not work.

   b.  There is water intrusion at the roof and windows.

   c.  The pool liner is not adequate to keep water from leaking into the house, and there are multiple patches in the concrete pool box. Sawtooth recommends a complete renovation of the pool.

   d.  The pool equipment does not function.

   e.  The decking around the pool is rotting and Sawtooth recommends replacement.

   f.  The electrical system is not wired properly, nor was it completed. Extension cords and party lights were present throughout the house. Sawtooth has added permanent light fixtures and outlets.

   g.  The Property's radiant heating system does not function properly. The sole thermostat was hanging off a post by a wire above the range. Sawtooth relocated the thermostat and replaced it. Sawtooth recommends that the zoned system be completed, and that all three boilers be replaced.

   h.  Doors are broken, or do not close properly.

   i.  The sewage ejection pump does not function. Sawtooth replaced broken ejection lines, and all four ejection pumps and controls.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 17**

j.  The dishwasher does not work. Sawtooth performed repairs to add plumbing, a garbage disposal, and electricity. When the existing dishwasher was hooked up, it did not work, and required replacement.

k.  The cooktop lacks ventilation or a hood. Sawtooth recommends that a ventilation system be installed.

l.  The roof is not waterproofed adequately. Sawtooth recommends replacement of the roof.

77.    Sawtooth provided an estimate to complete the repairs to the elevator, pool, windows, and other defects in the total amount of $1,126,238.16. The estimate for repairs to the elevator, pool, and windows exceeds the $250,000.00 withheld.

78.    Plaintiffs have incurred a total of $72,754.84 in attorney fees and $2,459.34 in costs prior to April 22, 2024.

79.    Plaintiffs estimated they would incur an additional $10,000.00 in attorney fees up through the date of the August 7, 2024 evidentiary hearing.

## ANALYSIS AND CONCLUSIONS OF LAW

On the basis of the above findings of fact, the Court enters its conclusions of law.

1.    The Court has diversity jurisdiction of the subject matter and the parties. 28 U.S.C. § 1332; 28 U.S.C. § 636(c)(1).

2.    A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Fed. R. Civ. P. 54(c).

3.    If a plaintiff's claim is not for a sum certain or a sum that can be made certain by computation, a plaintiff must apply to the Court for a default judgment. The Court may

FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 18

conduct hearings when, to enter or effectuate judgment, it needs to determine the amount

of damages; establish the truth of any allegation by evidence; or investigate any other

matter. Fed. R. Civ. P. 55(b).

4.       When a party has failed to answer and is in default, all factual allegations set forth

in a verified complaint, except those relating to the amount of damages, are taken as true.

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

5.       Here, Defendants filed an answer. (Dkt. 7.) Following the withdrawal of counsel,

Defendants were notified that a failure to appear would be sufficient grounds to

commence further proceedings, including entry of a default judgment. (Dkt. 76.)

Plaintiffs therefore proceed pursuant to Fed. R. Civ. P. 55(b)(2).

## BREACH OF CONTRACT

1.       For Plaintiffs to recover from Defendants under their breach of contract claim,

they must prove that: (1) a valid contract existed between the Plaintiffs and Defendants;

(2) Plaintiffs performed their obligations under the contract; (3) Defendants failed to

perform their part of the contract; (4) Plaintiffs were damaged by Defendants' breach;

and, (5) the amount of those damages. *Mosell Equities, LLC v. Berryhill & Co.*, 154

Idaho 269, 278, 297 P.3d 232, 241 (2013).

2.       A party breaches a contract when they fail to perform any contractual duty or

promise which forms the whole or part of a contract. *Idaho Power Co. v. Cogeneration,

Inc.*, 134 Idaho 738, 746, 9 P.3d 1204, 1212 (2000).

3.       Questions of contract interpretation and enforcement are normally the sole

province of the Court. Interpretation and legal effect of an unambiguous contract are

questions of law over which the Court exercises free review. In construing a written instrument, the Court must consider it as whole and give meaning to all provisions of the writing to the extent possible. *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 748, 9 P.3d 1204, 1214 (2000).

4.     A party may recover only such damages as can be said to be incidental to the contract and caused by its breach, and reasonably contemplated by the parties at the time the contract was entered into. *Suitts v. First Sec. Bank of Idaho, N.A.*, 110 Idaho 15, 22, 713 P.2d 1374, 1381 (1985).

5.     Heather Hart understands the contract to consist of the purchase and sale agreement, counter offer 1, addendums 1 and 2, and the Seller's property condition disclosure. The Court concurs, in part. The contract documents in this case also include the contingency release and the escrow agreement.

6.     A contract to purchase the Property existed between Buyers and Seller.

7.     Gerard Hart and Heather Ann Hart ("Buyers") assigned their rights under the contract to purchase the Property to the Trust.

8.     Legends was the owner and Seller of the Property ("Seller").

9.     Buyers had the opportunity to conduct inspections, and availed themselves of the opportunity to do so.

10.     As a result of a general inspection and Seller's property disclosure, Buyers were aware that there was no hood or other ventilation system over the range/cooktop; the pool leaked; windows were defective; there was a gas leak; the dishwasher was not hooked up or otherwise working; the water heater was old; the elevator did not work; one of the

bathrooms was unfinished; deck boards were rotted; and there was moisture intrusion from the roof-top pool.

11.    Buyers were also aware of any other defects that a visual inspection would have revealed, such as the lack of a hood or downdraft, lack of a disposal, incomplete electrical installation, broken windows, incomplete plumbing, the thermostat placement, and any other items that a visual walk through would have revealed.

12.    The Seller's Property Condition Disclosure form (Ex. 9), as well as the Purchase and Sale Agreement (Ex. 4), contained express disclaimers that:

    a.  The information on Seller's Property Condition Disclosure form was true and correct as of October 26, 2021;
    b.  Seller possessed no greater knowledge than that which could be obtained by an inspection;
    c.  Unless otherwise advised, Seller had no expertise in construction nor had conducted an inspection of the roof;
    d.  The Seller's property disclosure was not a warranty of any kind, and Seller made no warranty, including of habitability, and therefore Buyer had no protection against major defects which were not readily remediable.

13.    There was no evidence presented to the Court concerning Legend's expertise in residential home construction, what the condition of the Property was when Legend's purchased it, or exactly what work Legends had performed to the Property prior to Plaintiffs' purchase. Further, Plaintiffs presented no evidence that they had been advised Seller had conducted any prior inspection of the Property, including the roof, such that they could rely on Seller's Property Condition Disclosure without conducting their own inspections of the Property to ascertain its condition.

14.     Buyers failed to object to any disclosure on the Seller's Property Disclosure form despite knowing of the defects revealed by the property inspection report (Ex. 85) and their own visual inspection.

15.     There was no evidence Buyers had additional inspections conducted within the inspection contingency period, such as a pool inspection, septic inspection, roof inspection, or an inspection by another qualified contractor, such as a general contractor, electrical contractor, plumbing contractor, or HVAC contractor.

16.     Based on the unambiguous language of the contract documents, and construing them as a whole, the Court concludes that Buyers waived the inspection contingency upon the closing date of May 23, 2023, and accepted the condition of the Property other than the items expressly agreed to be repaired by Seller as set forth in Paragraph 16 of the Purchase and Sale Agreement, the Inspection Contingency Release, and the Escrow Agreement.

17.     The items that Seller expressly agreed to repair, and which Buyers were limited to, included completing the work on the elevator, installing a new pool liner, repairing the leaks in the ceiling below the pool, replacing all damaged windows, and repairing any doors that required repair.

18.     The Court finds that Plaintiffs have proved by a preponderance of the evidence that Legends committed a breach of contract when, by December 1, 2022, it failed to complete the work on the elevator, install a new pool liner, repair the leaks in the ceiling below the pool, replace all damaged windows, and repair any malfunctioning doors.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 22**

19.    The Court finds that the unambiguous terms of the contract documents, which include the Escrow Agreement, limit Plaintiffs' remedy. (Ex. 11.) The Escrow Agreement expressly provides that, if the agreed upon repairs are not completed by December 1, 2022, or in the event that any dispute arises between the principals or with any third party, the Escrow Holder is authorized and directed after sixty (60) days from December 1, 2022, to disburse all escrow funds in the form of cashier's check payable to both Buyer and Seller and deliver to Buyers' broker - Pioneer Associates, P.O. Box 5618, Ketchum, ID  83340.[5]

20.    The Escrow Agreement further states that no interest is to be paid on account of the funds held in escrow. The Court therefore concludes that Plaintiffs are not entitled to prejudgment interest on the escrowed funds.

21.    The Court finds that Plaintiffs are entitled to the remaining $141,370.65 in escrowed funds, as they did not receive the benefit of the repairs promised by Seller.

22.    The Court lacks authority to enter a judgment against a nonparty, and therefore cannot order the Escrow Holder to release the funds directly to Plaintiffs. *See* Wright & Miller 12 Fed. Prac. & Proc. Civ. § 3033 Order Against Persons Not Parties, (3d ed.). *See also Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998) (Fed. R. Civ. P. 71 works in tandem with Rule 70 to "provide for the enforcement of judgments against non-parties in limited circumstances.").

---

[5] It is not clear from the record whether the Escrow Holder disbursed the funds as required by the Escrow Agreement. *See* n. 4, supra.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 23**

23.    The Court concludes that Plaintiffs have not proved that Gary J. Engman

personally guaranteed Legend's obligation to perform under the purchase and sale

agreement. The parties to the Escrow Agreement were Legends Development Company

and Trustees Gerard J. Hart and Heather Ann Hart. Further, no evidence was introduced

to establish that the corporate veil should be pierced.

24.    The Court will therefore enter a judgment in the amount of $141,370.65 in favor

of Plaintiffs and against Defendant Legends Development Company.

### BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

1.    The implied covenant of good faith and fair dealing is a covenant implied by law

in the parties' contract. No covenant will be implied which is contrary to the terms of the

contract negotiated and executed by the parties. *See First Security Bank of Idaho v.*

*Gaige*, 115 Idaho 172, 176, 765 P.2d 683, 687 (1988); *Clement v. Farmers Ins.*

*Exchange*, 115 Idaho 298, 300, 766 P.2d 768, 770 (1988) (an implied covenant of good

faith and fair dealing cannot override an express provision in a contract).

2.    The covenant requires that the parties perform, in good faith, the obligations

imposed by their agreement, and a violation of the covenant occurs only when either

party violates, nullifies or significantly impairs any benefit of the contract. *See Idaho*

*First Nat. Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 289, 824 P.2d 841, 863

(1991).

3.    Legends breached the covenant of good faith and fair dealing when it failed to

complete the repairs to the elevator, pool, windows, and doors by December 1, 2022,

after representing several times how and when the same would be repaired.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 24**

4.    Pursuant to the parties' agreement, the amount set aside for these repairs and remaining in escrow is $141,370.65. A money judgment in this amount will be entered against Defendant Legends.

## IDAHO PROPERTY CONDITION DISCLOSURE ACT

1.    Plaintiffs seek damages under the Idaho Property Condition Disclosure Act, Idaho Code § 55-2501 *et. seq*., on the grounds that the RE-25 Seller's Property Disclosure form dated October 26, 2021, (Ex. 9), contained falsehoods as to the condition of the Property.

2.    Specifically, Plaintiffs contend the form contained the following false disclosures: (1) the dishwasher was marked as "working" but it was inoperable; (2) the cooktop was marked as "working" but had some serious gas leaks which required that the cooktop be completely removed and replaced; (3) the septic system was marked as "working" but instead the tank was full and seeping sewage/odor; (4) the sump pump was marked as "working" but instead it was damaged/inoperable such that it was spraying grey water and black water into the interior of the house; (5) there were electrical defects, and the light fixtures had bare/stripped wiring inserted into outlets; (6) the security system and the flowmeter on the fire alarm/sprinkler system were marked as working, but instead were inoperable; and, (7) the hot tub/jacuzzi was marked as working when it had been removed and wiring was exposed to the elements. (Dkt. 90.)

3.    The Complaint alleges also that Seller indicated the sink garbage disposal was marked as working, but that there was no disposal; and the smoke and carbon monoxide detectors were marked as working but there were none installed.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 25**

4.      Idaho Code § 55-2502 requires sellers of residential real property to disclose certain defects in the residential real property to a prospective buyer.

5.      The Property constitutes "residential real property" and Legends was the Seller of the Property. Idaho Code § 55-2503(2), (3). There are no applicable exemptions preventing application of the Act. *See* Idaho Code § 55-2505.

6.      A transferor of any residential real property is required to complete all applicable items in a property disclosure form. Idaho Code § 55-2504.

7.      A transferor of real property must deliver a signed and dated copy of the completed disclosure form to each prospective transferee or his agent within ten days of transferor's acceptance of transferee's offer. A prospective transferee of residential real property who receives a signed and dated copy of a completed property disclosure form "shall acknowledge receipt of the form by doing both of the following: (1) signing and dating a copy of the form; (2) delivering a signed and dated copy of the form to the transferor or his agent or subagent." Idaho Code § 55-2509. Delivery "shall be made by personal delivery to the other party or his agent or subagent…." Idaho Code § 55-2510.

8.      A seller is not liable for any error, inaccuracy or omission of any information delivered pursuant to the Act "if the error, inaccuracy or omission was not within the personal knowledge of the [seller] or was based on information timely provided by…[t]he delivery of a report or opinion prepared by any person or professional who has been hired [by the seller] to perform an inspection of the subject property in connection with the proposed sale…." Idaho Code § 55-2511(1), (3); *Lindberg v. Roseth*, 137 Idaho

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 26**

222, 230, 46 P.3d 518, 526 (2002) (subsection 2511(3) applies only to delivery of a report by the seller).

9.     If latent defects manifest themselves after purchase, and would not have been discoverable upon a reasonable inspection, the buyer who has made an inspection and did not discover such defects can still recover if the seller fraudulently failed to disclose or misrepresented the existence of such defects. *Lindberg v. Roseth*, 137 Idaho 222, 228, 46 P.3d 518, 524 (2002); *Tusch Enterprises v. Coffin*, 113 Idaho 37, 50, 740 P.2d 1022, 1035 (1987); *Bethlahmy v. Bechtel*, 91 Idaho 55, 59, 415 P.2d 698, 702 (1966).

10.    If information disclosed in accordance with the Act is later rendered inaccurate as a result of any act, occurrence or agreement after the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of the Act. Idaho Code § 55-2512.

11.    Each disclosure required by the Act and each act which may be performed in making the disclosure "shall be made in good faith…good faith means honesty in fact, in the conduct of the transaction." Idaho Code § 55-2516.

12.    Any person "who willfully or negligently violates or fails to perform any duties prescribed by any provision of [the Act] shall be liable in the amount of actual damages suffered by the transferee." Idaho Code § 55-2517.

13.    The disclosure requirements of the Act do not bar the application of any legal equitable defense that a seller of residential real property may assert in a civil action commenced against the seller by a prospective or actual buyer of the property. Idaho Code § 55-2514.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 27**

14.     The Court finds the Plaintiffs may not rely upon the Seller's Property Condition Disclosure form to recover damages related to any of the disclosures made therein, because they discovered the defects complained of in this lawsuit during their own inspection, or otherwise could have discovered them upon a reasonable inspection.

    a.  The inspection report obtained by Plaintiffs indicated the dishwasher was not plugged in, and was inoperable.

    b.  A reasonable visual inspection would have noted the absence of a sink garbage disposal.

    c.  The Complaint noted that the cooktop/range contains a number of serious gas leaks. But the inspection report obtained by Plaintiffs noted serious gas leaks.

    d.  The Purchase and Sale Agreement indicated Plaintiffs would pay for a septic inspection and septic pumping. A reasonable inspection would have revealed the existence of a full septic tank and whether it was seeping sewage.

    e.  With regard to the sump pump and the sewage ejector pump, the inspection report obtained by the Buyers indicated that its condition appeared serviceable, but that one or more drainpipes were cracked or broken. The inspector recommended that a qualified plumber evaluate and repair as necessary. A reasonable inspection by a qualified plumber or contractor would have revealed the existence of the defects.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 28**

f.  A reasonable visual inspection would have revealed the existence of the electrical defects Plaintiffs complain of in this lawsuit, such as the presence of extension cords, string lights, and the bare or stripped wiring. Further, the inspection report obtained by the Buyers indicated the legend for circuit breakers in the panel was incomplete, the cover was locked at the main panel, and that there were GFCI defects. The report recommended that a qualified electrician evaluate the defects. Plaintiffs did not avail themselves of the opportunity to conduct an inspection by an electrical contractor.

g.  A reasonable visual inspection during the final walkthrough by Plaintiffs prior to closing would have noted the absence of the hot tub/jacuzzi.

h.  A reasonable visual inspection would have noted the presence or absence of smoke detectors and carbon monoxide detectors. The inspection report obtained by Buyers noted the presence of smoke detectors and carbon monoxide alarms, and indicated they were installed.

15.  There is no estimate concerning the cost to repair the security system and the flowmeter on the fire alarm/sprinkler system. Ex. 69. Accordingly, Plaintiffs have not proven the amount of damages related to this particular defect.

16.  There is no evidence that any of the items marked "working" by Seller were not working at the time Seller completed the property disclosure form on October 26, 2021.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 29**

17.     Accordingly, the Court finds Plaintiffs are not entitled to damages pursuant to the Idaho Property Condition Disclosure Act.

## IDAHO CONSUMER PROTECTION ACT

1.     Under section 48-608(1), "a consumer must prove three elements to establish a claim: (1) the consumer purchased goods or services from a seller; (2) the seller engaged in unfair or deceptive act(s) or practice(s) that are declared unlawful under the ICPA; and (3) the unfair act(s) or practice(s) caused the consumer to suffer an 'ascertainable loss of money or property' (real or personal)." *Litster Frost Inj. Laws., PLLC*, *v. Idaho Injury Law Group, PLLC*, 171 Idaho 1, 6, 518 P.3d 1, 11 (2021) (quoting Idaho Code § 48-608(1)).

2.     Idaho Code § 48-603(17) declares that it is unlawful to "engage in any act or practice which is misleading, false, or deceptive to the consumer."

3.     The Idaho Consumer Protection Act applies to protect purchasers of real property. *Tricore Invs., LLC v. Est. of Warren through Warren*, 168 Idaho 596, 617, 485 P.3d 92, 113 (2021).

4.     Legends engaged in misleading or deceptive acts by its continued promises to complete repairs to the elevator, pool, windows, and doors, and its failure to do so.

5.     Plaintiffs' remedy is limited to recovery of a money judgment equivalent to the amount of the funds held in escrow for that purpose.

**FRAUD**

1.      Fraud is composed of nine separate elements: (1) a statement of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge about its falsity or ignorance of its truth; (5) the speaker's intent to induce reliance; (6) the hearer's ignorance of its falsity; (7) reliance by the hearer; (8) the hearer's right to rely thereon; and, (9) consequent and proximate injury. *Humphries v. Becker*, 159 Idaho 728, 738, 366 P.3d 1088, 1098 (2016).

2.      In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake, and must provide evidence sufficient to prove each element. *Id. See also* Fed. R. Civ. P. 9(b)

3.      Plaintiffs have burden of establishing all elements of fraud by clear and convincing evidence. *Nelson v. Hoff*, 70 Idaho 354, 359, 218 P.2d 345, 348 (1950).

4.      Plaintiffs have not established reliance, because Plaintiffs either discovered the defects complained of during their own inspection, or otherwise could have discovered them upon a reasonable inspection. *See Walker v. Nunnenkamp*, 84 Idaho 485, 491, 373 P.2d 559, 562 (1962) (where a party relies upon his own investigation, he is not entitled to relief upon the ground of false representations.).

**RESCISSION**

1.      Plaintiffs seek the equitable remedy of rescission, asserted on the grounds of fraud and violation of the Idaho Property Disclosure Act, Idaho Code § 55-2501 *et. seq*.

2.      A party seeking to rescind a transaction must restore or offer to restore the other party to the status quo before the contract was formed. *Watson v. Weick*, 141 Idaho 500, 507, 112 P.3d 788, 795 (2005).

3.      If a buyer of residential real property receives the Seller's Property Condition Disclosure form after the buyer has entered into a transfer agreement with respect to residential real property, the buyer, after his receipt of the form, may rescind the transfer agreement in a written, signed and dated document that is delivered to the seller or his agents in accordance with Idaho Code § 55-2510, and must be based on a specific objection to a disclosure in the disclosure statement. Idaho Code § 55-2515.

4.      Plaintiffs did not seek rescission in accordance with Idaho Code § 55-2515, because they failed to object to Seller's Property Condition Disclosure form in writing, did not object to any specific disclosure, and did not invoke their right to rescind within three business days despite an inspection which revealed material defects at the Property.

5.      Buyers thereafter waived the inspection contingency and, upon closing on May 23, 2022, accepted the Property subject only to repairs to the elevator, pool, windows, and doors. *See White v. Mock*, 140 Idaho 882, 887, 104 P.3d 356, 361 (2004) (finding plaintiff did not seek timely rescission in accordance with Idaho Code § 55-2515 because he did not exercise that right within three days of receiving the seller's property disclosure form, and proceeded with the transaction.).

## SPECIFIC PERFORMANCE

1.      Specific performance is an extraordinary remedy that provides relief when legal remedies are inadequate. *P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007).

2.      The decision to grant specific performance is a matter within the Court's discretion. *Id.*

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 32**

3.      Here, damages are an adequate remedy in an amount equal to the $141,370.65 held in escrow. Plaintiffs have proven that the repairs promised and not completed will equal, if not exceed, this amount. Accordingly, judgment against Defendant Legends in the amount of $141,370.65 will be entered, to be amended by an award of reasonable attorney fees and costs, pursuant to the discussion below.

## ATTORNEYS FEES

1.      In diversity actions, the Court looks to state law with respect to an award of attorney fees. *Yellowstone Poky, LLC v. First Pocatello Assocs., L.P.*, No. 4:16-CV-00316, 2020 WL 5790385, at *2 (D. Idaho Sept. 28, 2020) (citing *Kayser v. McClary*, 857 F.Supp.2nd 1167, 1183 (D. Idaho 2012)).

2.      Idaho Code § 12-120(3) permits the prevailing party in any commercial transaction related to the purchase or sale of goods to be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

3.      The Purchase and Sale Agreement provides for the recovery of "reasonable costs and attorneys' fees" to the prevailing party.

4.      A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages. Fed. R. Civ. P. 54(d)(2)(A).

5.      Unless a statute or court order provides otherwise, the motion must be filed no later than 14 days after entry of judgment, and state the amount sought or provide a fair estimate of it. Fed. R. Civ. P. 54(d)(2)(B)(i), (iii).

6.    The Court may decide the issue of liability for fees before receiving submissions on the value of services. Fed. R. Civ. P. 54(d)(2)(C).

7.    Plaintiffs have included in their motion for entry of judgment a request for attorney fees and costs, and submitted an affidavit of counsel with an itemization of fees incurred, which total $72,754.84 in attorney fees and $2,459.34 in costs to investigate and prosecute this action up through April 22, 2024. (Dkt. 77-3.)

8.    Plaintiffs estimate another $10,000.00 in attorney fees through the conclusion of the evidentiary hearing.

9.    Plaintiffs have prevailed on their claim for breach of contract, and are therefore entitled to reasonable costs and attorney fees pursuant to the terms of the Purchase and Sale Agreement and Idaho Code § 12-120(3). *Tricore Invs., LLC v. Est. of Warren through Warren*, 168 Idaho 596, 630, 485 P.3d 92, 126 (2021); *Garner v. Bartschi*, 139 Idaho 430, 439, 80 P.3d 1031, 1040 (2003).

10.    Plaintiffs' complaint includes also a claim for fees pursuant to Idaho Code § 12-121, which permits the Court to award reasonable attorney's fees to the prevailing party when the Court finds that the case was "brought, pursued or defended frivolously, unreasonably or without foundation."

11.    The Court finds that Defendants defended this action unreasonably. No less than four attorneys appeared on behalf of Defendants, all of whom later withdrew in serial fashion. The Court found Defendants had engaged in culpable conduct because of their repeated failures to obtain new counsel in compliance with the Court's orders, resulting in a finding of willful and bad faith failure to respond. (Dkt. 71 at 7.)

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 34**

12.    The Court also found Plaintiffs would be prejudiced if the Clerk's default was set aside. This case has been pending since July 29, 2022, and Defendants' conduct has resulted in the unnecessary prolonging of this matter due to repeated failures to engage in the process.

13.    Defendants thereafter failed to appear for the hearing, or otherwise defend, following entry of the Court's order denying Defendants' motion to set aside the default and the withdrawal of counsel.

14.    There appears to be no meritorious defense Defendants could have raised to Plaintiffs' breach of contract claim. Legends promised, not only in its representations to prospective purchasers by virtue of the RE-25 Seller's Property Condition Disclosure form, but also in the purchase and sale agreement, to complete repairs to the elevator, pool, windows and doors, yet failed to do so despite multiple extensions of time provided by Plaintiffs.

15.    The Court will require Plaintiffs to file a motion pursuant to Fed. R. Civ. P. 54(d)(2)(A) and (B), and a bill of costs, setting forth the amount of attorney fees and costs sought up through the filing of the motion and the evidentiary hearing.

16.    Plaintiffs' motion and supporting affidavits should address the reasonableness factors set forth in Idaho R. Civ. P. 54(e)(3). *Yellowstone Poky, LLC v. First Pocatello Assocs., L.P.*, No. 4:16-CV-00316, 2020 WL 5790385, at *2 (D. Idaho Sept. 28, 2020).

**FINDINGS OF FACT AND CONCLUSIONS OF LAW  - 35**

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiffs' First Motion for Entry of Default Judgment (Dkt. 77) is

   **GRANTED IN PART AND DENIED IN PART**.

2) Judgment for $141,370.65 will be entered in favor of Plaintiffs and against

   Defendant Legends Development Company on the claims for breach of

   contract and breach of the covenant of good faith and fair dealing.

3) Plaintiffs are entitled also to an award of reasonable attorney fees and costs,

   which amounts will be determined upon submission of a motion compliant

   with Fed. R. Civ. P. 54 and the filing of a bill of costs.

Dated: **August 27, 2024**

Candy W. Dale
United States Magistrate Judge